# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Martinez*, 2011 IL App (2d) 100498

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ESTEBAN MARTINEZ, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-10-0498 |
| Filed | October 5, 2011 |
| Rehearing denied | November 8, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for aggravated battery and mob action, the trial court's action in purporting to acquit defendant following a jury trial was an appealable dismissal rather than a nonappealable acquittal where no witnesses were sworn, the State presented no evidence, and jeopardy never attached; therefore, the appellate court had jurisdiction under Supreme Court Rule 604(a)(1), and it agreed with the State that the trial court erred in denying the State's motion for a continuance based on the absence of material witnesses and the resulting prejudice to the State and the lack of great prejudice to defendant, and the cause was remanded for the setting of a trial date. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 06-CF-1731; the Hon. Timothy Q. Sheldon, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |

Counsel on
Appeal

Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Thomas A. Lilien and Darren E. Miller, both of State Appellate Defender's Office, of Elgin, for appellee.

Panel

JUSTICE BIRKETT delivered the judgment of the court, with opinion
Justice Hudson concurred in the judgment and opinion.
Justice McLaren specially concurred, with opinion.

**OPINION**

¶ 1      The State appeals from an order of the trial court, following a jury trial, purporting to acquit defendant of charges of aggravated battery (720 ILCS 5/12-4(a) (West 2004)) and mob action (720 ILCS 5/25-1(a)(1) (West 2004)). The State argues that the trial court abused its discretion in refusing to grant the State a continuance on the day of trial. Defendant not only disagrees but claims we lack jurisdiction over this appeal. For the reasons that follow, we find that we have jurisdiction, and we reverse the trial court's judgment and remand this case for further proceedings.

¶ 2                                    BACKGROUND

¶ 3      We set forth in some detail a chronology of events below, as it is integral to the issues at hand. On July 7, 2006, the State filed a two-count complaint charging that defendant committed aggravated battery and mob action against Avery Binion and Demarco Scott. On August 9, the State filed an indictment alleging the same offenses against the same victims. On November 9, defendant was arraigned and bail was set at $30,000. On December 7, defendant filed a motion to reduce bail. The court granted the motion, and defendant posted bond. Also on December 7, the public defender was granted leave to withdraw and private counsel was appointed. By agreement, the court continued the case for a pretrial conference on December 21. On that date, defendant filed a motion for discovery. By agreement, the court continued the case to February 15, 2007, for "402/FPTC," or final pretrial conference. The court's order notes that defendant was admonished under "402," or Illinois Supreme Court Rule 402 (eff. July 1, 1997), and that he consented to the continuance.

¶ 4      On January 29, 2007, defense counsel moved to withdraw. On February 15, the court granted counsel leave to withdraw and, by agreement, set the matter for status on April 12. On that date, the case was again continued by agreement to May 24 for status. On May 24,

-2-

the public defender was appointed and the case was again continued by agreement to June 21 for status. The court's order entered on June 21 notes that "402 [was] requested" and that defendant was admonished and consented. The case was continued by agreement to August 2 for status. On August 2, defendant did not appear, and the court continued the matter, by agreement, to August 23 for status. On August 23, defendant again was absent. His bond was forfeited and an arrest warrant was issued. Defendant failed to appear at two further court dates in October and November 2007, and ultimately he was taken into custody on July 12, 2008. Defendant posted bond again on July 16. On July 24, the case was continued to August 28 on motion of defendant. On August 28, defendant was arraigned, the public defender was appointed, and the matter was continued by agreement to September 26 for status.

¶ 5       On September 8, 2008, defendant filed a speedy-trial demand and another discovery demand. Between September 26, 2008, and May 7, 2009, there were several further agreed continuances for status. The court's order of May 7 stated that the "State elects on this case" and set the matter for final pretrial conference on July 31 and for trial on August 3. On May 19, the State filed a discovery disclosure to the defense. On July 20, the State moved to continue the trial date of August 3 because one witness, a police detective, was unavailable until August 17 and because Binion and Scott "ha[d] not been located." The State represented that all three witnesses were material. On July 24, the State issued subpoenas to Binion and Scott. An order entered on July 31, the date of the pretrial conference, showed that defendant did not appear in court. The order granted the State's motion for a continuance and set the matter for August 3 for "appearance of defendant" and to "reset trial." On August 3, the court set the matter for pretrial conference on September 25 and for trial on September 28.

¶ 6       On the pretrial date of September 25, 2009, the State filed another motion for a continuance based on its failure to locate Binion and Scott. Over defendant's objection, the trial was rescheduled to November 9. On October 13, the State again issued subpoenas to Binion and Scott. On November 9, defendant was late to court, and, on the State's motion, the court continued the trial to November 30. On November 25, defendant moved for a continuance because defense counsel had a scheduling conflict with the current trial date. The court rescheduled the trial to March 8, 2010. On December 15, 2009, well in advance of the trial date, the State moved for a continuance due to a scheduling conflict with one of its witnesses. Over defendant's objection, the court postponed the trial to March 29, 2010.

¶ 7       On February 1, 2010, the State issued additional subpoenas to Binion and Scott to appear on March 29. On March 29, the trial court entered two orders. The first order granted the State's "motion for a continuance" and set the matter for trial on May 17. There is no written motion in the record, and the grounds for this motion are not otherwise evident. The second order directed that rules to show cause issue against Binion and Scott, returnable on May 10. The record does not reflect what transpired on the return date of May 10. On April 14, the State issued a subpoena to Scott, to appear on May 17. (No subpoena for Binion appears in the record, but defendant does not dispute that a subpoena was issued.)

¶ 8       On May 17, the parties appeared before the court for the scheduled jury trial. When the case was called, this exchange immediately followed:

"MS. CREEKMUR [Assistant State's Attorney]: *** At this time the State is not ready. We would be asking for a continuance even for just a few moments, or if we could have just a little bit longer to see if our witnesses [Binion and Scott] will be arriving. They are not here yet. I am hopeful that they will be here today.

THE COURT: Well, here's what I can do for you ***. I don't wish to wait all morning long for these people to stroll in, but I will allow us to get started, but I won't swear the panels until I have a whole jury. How is that?

MS. CREEKMUR: Yes, your honor. If we could not swear them in, and before swearing them in if I could have a momentary recess.

THE COURT: What I'll do is we'll pick a panel, send them back, pick the next panel, send them back, pick the last panel, send them back, pick your alternate or alternates, send them back. I'll give you ten minutes, bring them out and swear them in or move to dismiss your case if you wish.

MS. CREEKMUR: Thank you, your Honor.

MS. WILLET [defense counsel]: Judge, I am objecting. I'm asking for a continuance. My client is not present yet. I certainly would ask for a short period of time if my continuance is not granted for him to be present before selecting the jury due to the prejudice that will occur even if he arrives late. That's my request, Judge.

THE COURT: Motion denied. As soon as the jury is up, we're going to start."

¶ 9     What follows in the report of proceedings is this notation: "WHEREUPON a jury was selected by the State and the Defense, which was reported but not transcribed herein." When the transcription resumed, the court asked whether the State's witnesses had arrived. The State replied that they had not and that the State was filing a written motion to continue the trial in order to arrange for the appearance of Binion and Scott. The written motion sought "an order continuing the Jury trial in the *** case" and stated that this relief would not "greatly prejudice" the defense but that the State would indeed be "greatly prejudiced" if the relief were denied. After the State announced that it had filed a written motion for a continuance, this colloquy followed:

"MS. CREEKMUR: Your Honor, it is now 10:06 [a.m.] We have not seen [Binion or Scott], both witnesses. We are unable to proceed without them, and we would be asking for a continuance.

THE COURT: Have you sent the police out to knock on their door?

MS. CREEKMUR: I believe we've been checking on that and unable to locate them as of now. They also have cases that are up before your Honor this morning.

THE COURT: Yes, they have. ***

You have service on both these gentlemen?

MS. CREEKMUR: Mr. Scott, I believe, was served some time ago. They both did appear last week in court, were given court orders to appear today.

THE COURT: Okay. Anything further you would like to say on your motion to continue?

MS. CREEKMUR: No, your Honor.

THE COURT: Defense?

MS. WILLET: Judge, we certainly are objecting to any continuance, continuing in our demand for speedy trial.

THE COURT: I will make these findings: The case before the Court began on July 7, 2006. In two months we will then be embarking upon half a decade of pending a [*sic*] Class 3 felony. [Binion and Scott] are well known in Elgin, both are convicted felons. One would believe that the Elgin Police Department would know their whereabouts. They were ordered to be in court today. The Court will issue body writs for both of these gentlemen.

In addition, the State's list of witnesses indicates twelve witnesses. Excluding Mr. Scott and Mr. Binion, that's ten witnesses. The Court would anticipate it would take every bit of today and most of tomorrow to get through ten witnesses. By then the People may have had a chance to execute the arrest warrant body writs for these two gentlemen.

The Court will deny the motion for continuance. I will swear the jury in in 15, 20 minutes. Perhaps you might want to send the police out to find these two gentlemen."

¶ 10 The court then took a recess, following which was this exchange:

"THE COURT: ***

Shall I bring the jury in to swear them in or would a continuance to 1:30 [p.m.] be of any help?

MS. CREEKMUR: I'm not sure if it would be helpful or not. Obviously, the State would like the continuance to see if we can get our witnesses here.

THE COURT: My concern is this will be a further waste of time and that you're not going to get any cooperation out of these two witnesses.

MS. CREEKMUR: There [*sic*] whereabouts are unknown. We have had our officers look into it, and their whereabouts at this time are unknown. I do not know.

THE COURT: Okay. So you don't have any knowledge of where they are, so 1:00 [p.m.] would be a further waste of time as far as getting this matter–

MS. CREEKMUR: As far as the officers being able to locate them, yes. The officers are unable to locate them. However, if they appeared on their own between now–

THE COURT: And they haven't. It's a quarter to eleven and they have not appeared on their own will, so I'm going to bring the jury in now and swear them.

MS. CREEKMUR: Okay. Your Honor, may I approach briefly?

THE COURT: Yes.

MS. CREEKMUR: Your Honor, just so your Honor is aware, I know that it's the process to bring them in and swear them in; however, the State will not be participating in the trial. I wanted to let you know that.

THE COURT: Very well. We'll see how that works.

MS. CREEKMUR: Yes, your Honor."

¶ 11     The jury was then brought in, sworn, and given preliminary instructions. When invited to give its opening statements, the State said, "Your Honor, respectfully, the State is not participating in this case." The defense was then invited to proceed, and it waived its opening statement. When invited to present its first witness, the State said, "Respectfully, your Honor, the State is not participating in this matter." The court then took a recess for the defense to speak with the court. Following the recess, the defense moved for "directed findings of not guilty" on both counts, in view of the State's failure to present any evidence. When invited to respond, the State again declined to participate in the proceeding. The court announced that it would "grant the motion for a directed finding and dismiss the charges." The court's written order stated: "[Defendant's] motion for directed finding is granted as to all charges. Matter is dismissed."

¶ 12     Two days later, on May 19, 2010, the State filed a certificate of impairment as well as a notice of appeal under Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2006).

¶ 13                                                   ANALYSIS

¶ 14     The State argues that the trial court abused its discretion in refusing to grant the State a continuance to secure the appearance of its material witnesses, Binion and Scott. We agree, as explained below. First, however, we deal with a jurisdictional challenge.

¶ 15                                              I. JURISDICTION

¶ 16     Defendant questions whether Rule 604(a)(1), the provision under which the State filed its appeal, grants us jurisdiction here. The rule states that "[i]n criminal cases the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge for any of the grounds enumerated in section 114-1 of the Code of Criminal Procedure of 1963 [(725 ILCS 5/114-1 (West 2004))]." Ill. S. Ct. R. 604(a)(1) (eff. July 1, 2006). The question the parties put to us is not whether the trial court dismissed the charges for one of the grounds listed in section 114-1, but whether the court's action was a dismissal at all. Defendant contends that the trial court's action was rather an acquittal of the charges, from which the State cannot constitutionally appeal.

¶ 17     Article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) states that, "after a trial on the merits in a criminal case, there shall be no appeal from a judgment of acquittal." If jeopardy has attached before the trial court's judgment, there has been an acquittal, and not a dismissal, for purposes of both Rule 604(a)(1) and the Illinois Constitution, and the State may not appeal the judgment. *People v. Murray*, 306 Ill. App. 3d 280, 281-82 (1999). Even where double jeopardy principles are not implicated, a judgment may be deemed an "acquittal" following "a trial on the merits" (Ill. Const. 1970, art. VI, § 6). See *People v. Van Cleve*, 89 Ill. 2d 298, 307 (1982). In *Van Cleve*, the supreme court held that a judgment notwithstanding the verdict in a criminal case is nonappealable under article VI, section 6. *Id.* The court found "no reason why a judgment entered by a trial court notwithstanding the verdict, which in effect is but a reconsideration of a motion for directed verdict, is other than a nonappealable judgment of acquittal." *Id.* The court recognized that this construction of article VI, section 6, gave it greater scope than the double jeopardy

-6-

clause. The court explained that the reversal on appeal of a directed verdict or acquittal would open the possibility of retrial and hence further exposure to criminal conviction. By contrast, the reversal of a judgment notwithstanding the verdict would simply reinstate a guilty verdict. *Id.* at 305-07. The court held that, though double jeopardy principles do not bar the appeal of a judgment notwithstanding the verdict, such an appeal is nonetheless prohibited under article VI, section 6. *Id.* at 307.

¶ 18 Defendant does not cite *Van Cleve* itself but does cite subsequent cases recognizing its holding. Significantly, though *Van Cleve* reads article VI, section 6, as affording broader protection than the double jeopardy clause, neither it nor any other decision cited by defendant suggests that "a trial on the merits" per article VI, section 6, may be deemed to have occurred prior to the attachment of jeopardy. (For instance, the holding in *Van Cleve* was not based on "a trial on the merits" having occurred before jeopardy attached; by any definition, the trial had concluded and jeopardy attached. In essence, the court's holding was that a defendant's successful attack on a verdict does not undo this "trial on the merits" even though the double jeopardy clause would not be implicated by a successful State appeal of the judgment.)

¶ 19 The State relies upon a set of cases, *People v. Deems*, 81 Ill. 2d 384 (1980), and its progeny. As we explain at length below, these decisions make no distinction between when jeopardy attaches and when there has been a "trial on the merits" per article VI, section 6. The touchstone for the *Deems* cases is whether the proceedings advanced to such a degree before the trial court's "acquittal" that the defendant was placed at risk of conviction. Defendant does not dispute that these cases conflate the double jeopardy analysis with the analysis under article VI, section 6. Nor does he question the validity of this approach. Rather, he attempts to distinguish the cases on the facts, but he is unsuccessful, in our view. As we will show, defendant was at no greater risk here of being convicted than were the defendants in the *Deems* cases.

¶ 20 In *Deems* itself, the defendant was indicted for knowingly receiving stolen property. *Id.* at 386. On the date set for trial, the State conceded on the record that the defendant was not guilty of the charge. The State moved to dismiss the charge, indicating that it would indict the defendant for theft instead and would be ready for trial on the new charge within a week. *Id.* at 386-87. The defendant demanded an immediate trial on the current charge. The trial court, likening the State's dismissal motion to a request for a continuance, decided that the defendant was entitled to an immediate trial on the current charge if he was prepared for it. *Id.* at 387. The State protested that the court would have the State try a person it believed was innocent of the charge. The court remarked that it would prefer to dismiss the case with prejudice but believed that it had no authority to do so under supreme court precedent. *Id.* The court then declared that it would call the case for trial and acquit the defendant. The defendant proceeded to waive his right to a jury trial. *Id.* Neither party made an opening statement. When the court called for witnesses, the State said that it had none. The defendant was sworn as a witness but did not testify. *Id.* The court found the defendant not guilty and entered a judgment of acquittal. The State subsequently filed an indictment for theft, but the court dismissed it on double jeopardy grounds. The State appealed, seeking reversal of both the acquittal and the dismissal. *Id.*

¶ 21    The supreme court held that jeopardy did not attach in the proceeding on the knowingly-receiving-stolen-property charge. *Id.* at 389-90. The court noted that a trial court's use of the term "acquittal" to describe its judgment does not control the question of whether jeopardy attached:

> "While the judge denominated his action an 'acquittal,' it bore none of those characteristics except the label. *** The prosecutor was, in fact, doing his best to dismiss the charge against defendant on the ground that defendant was not guilty of the charged offense. Presumably the indictment would have been dismissed had defendant not persisted in demanding a trial. [Citation.]" *Id.* at 389.

The court remarked that the proceeding was not in substance a trial:

> "The 'trial' held at the first proceeding was a sham, an artifice employed by the trial judge to achieve the result of a dismissal with prejudice for want of prosecution which *** he did not have the authority to order. Such a 'trial' might conceivably be appropriate in extraordinary circumstances [citations],[1] but it is not permissible when the prosecutor, well within the 120-day rule, seeks to dismiss, stating that the defendant is not guilty of the crime charged and declaring that the State intends to seek an indictment for a related offense which will be promptly tried." *Id.*

¶ 22    Finally, the court recognized that "[t]he traditional rule is that jeopardy attaches in a bench trial when the first witness is sworn and the court begins to hear evidence." *Id.* The rules that specify when jeopardy begins, however, "should not be applied mechanically when the interests they protect are not endangered and when their mechanical application would frustrate society's interest in enforcing its criminal laws." *Id.* at 388. The core interest of the double jeopardy bar is that " ' "the State with all it resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense." ' " *Id.* (quoting *United States v. Scott*, 437 U.S. 82, 87 (1978), quoting *Green v. United States*, 355 U.S. 184, 187 (1957)). Where there has been no " 'risk of a determination of guilt,' " jeopardy has not truly attached. *Id.* at 390 (quoting *Serfass v. United States*, 420 U.S. 377, 391 (1975)); see also *People v. Aleman*, 281 Ill. App. 3d 991, 1008 (1996) (jeopardy did not attach, because the defendant's acquittal was procured through bribery of the trial judge, which meant that the defendant was never "subject to the risk normally associated with a criminal prosecution"). According to *Deems*, the traditional rule that double jeopardy attaches in a bench trial when the first witness is sworn and the court begins to hear evidence was "predicated upon the fact that the first witness is normally an individual whose testimony is part of the State's case–a prosecution witness whose appearance is part of the incriminating presentation jeopardizing defendant." *Deems*, 81 Ill. 2d at 390. In *Deems*, however, the only witness sworn was the defendant himself, and he did not testify. Since no other evidence was introduced, the defendant "was at no time during the[ ] proceedings in danger of being found guilty of any offense." *Id.* Because jeopardy did not attach in the first proceeding, the court vacated the "acquittal" and reversed the dismissal of the second

---

[1]The court did not elaborate on what constitutes "extraordinary circumstances," and defendant does not argue that such existed here.

indictment. *Id.* at 391.

¶ 23    In understanding the scope of *Deems*' holding, it is first important to note that the State appealed not just from the dismissal of the theft indictment but also from the "acquittal" on the receiving-stolen-property charge. Hence, the *Deems* court was faced with two technically distinct questions: whether jeopardy attached in the former proceeding, and whether the court's order in that proceeding was an appealable order of dismissal under Rule 604(a)(1). Significantly, the court conflated the analyses. Therefore, under *Deems*, the question of whether an "acquittal" by a trial court is tantamount to a dismissal of the State's charges is equivalent to whether the court's action occurred before jeopardy attached in the proceeding. Significantly, *Deems* noted that, in judging when jeopardy attaches, the rules of thumb developed by the courts must yield to the central concern of the double jeopardy clause, which is that the defendant must not twice be placed at "risk of a determination of guilt." (Internal quotation marks omitted.) *Id.* at 390.

¶ 24    *Deems*' approach was followed in *People v. Edwards*, 97 Ill. App. 3d 407, 408 (1981), where the State moved for a continuance on the day of trial, citing the unavailability of its key witnesses. The trial court denied the motion, purported to convene a bench trial, and invited the State to present its evidence. *Id.* The State replied that it had no evidence to present. *Id.* The court then asked defense counsel whether she wished to call the defendant as a witness. *Id.* at 409. Counsel called the defendant, who testified "as to her version of the circumstances and arrest." *Id.* The court inquired of the State whether it wished to cross-examine the defendant, and the State stated that it was not participating in the proceeding. *Id.* The court then found the defendant not guilty. *Id.*

¶ 25    The State brought an appeal under Rule 604(a)(1), arguing that appellate jurisdiction lay because the trial court's action was in substance a dismissal of the charge, though in form an acquittal. *Id.* at 408. The appellate court agreed, holding that jeopardy had not attached despite the fact that the defendant not only was sworn as a witness (as in *Deems*) but also gave testimony (unlike in *Deems*). *Id.* at 410-11. The court noted that the defendant's testimony was voluntary and exculpatory and that the State declined to cross-examine her. *Id.* Consequently, the court found it "difficult to see how either in law or common sense [the defendant's] election to testify in the absence of prosecution can have exposed her to jeopardy, single or double." *Id.* at 411. The court elaborated:

> "This is not a case where a trial court evaluated the government's evidence and determined that it was legally insufficient to sustain a conviction [citation], but one in which the government presented no evidence whatsoever upon which the trial court could have based any evaluation at all. In short, there simply was no trial. In our opinion, therefore, this situation is analogous to that in [*Deems*] ***." *Id.* at 411-12.

¶ 26    *People v. Verstat*, 112 Ill. App. 3d 90 (1983), relied on both *Deems* and *Edwards*. *Verstat* consolidated 11 State appeals from judgments denominated "acquittals" by the trial court. *Id.* at 91. The appellate court, describing the relevant similarities among the cases, held that in each one the "acquittal" was in substance a dismissal:

> "The 'trials' conducted below were essentially the same in all 11 cases. Upon the trial court's denial of the State's motion for continuance which was requested in most of the

cases, and its further denial of the State's motion to nol-pros in all 11 cases, the court on its own initiative swore in the defendant, asked several preliminary questions, and found the defendant not guilty without further evidence. The State did not participate in any of the trials except as to the defendant Bibbs, wherein the prosecutor's attempt to question Bibbs was disallowed on objection by defense counsel. We conclude that the 'trials' below in all 11 cases were shams. Each was an artifice employed by the trial judge to achieve the result of a dismissal with prejudice for want of prosecution. [Citations.] As held in *Edwards*, the fact that a defendant testifies is not a sufficient distinction from the other similar circumstances in *Deems* to warrant a departure from the rationale of the court in *Deems*. There were no trials. The State did not attempt to convict the defendants and, therefore, the 'acquittals' amounted to dismissals which are appealable by the State pursuant to Supreme Court Rule 604(a)(1)." *Id.* at 96-97.

¶ 27 The court added: "While a double jeopardy argument is also advanced, we deem that contention under the facts here to have been sufficiently answered and rejected in both *Deems* and *Edwards* not to warrant further discussion herein." *Id.* at 97.

¶ 28 The last of the *Deems* cases cited by the State is *People v. Harris*, 222 Ill. App. 3d 1089 (1991). *Harris* consolidated three State appeals. In each of the cases, the State moved for a continuance on the day of trial, claiming the unavailability of material witnesses. *Id.* at 1091-92. The trial court denied the motion and said that the matter would proceed to trial. *Id.* at 1092. Only one case was tried to a jury, and the State refused to participate in jury selection. *Id.* In each case, the State did not move to nol-pros the charges but stood on its motion to continue and presented no evidence. *Id.* at 1091-92. The defense also presented no evidence. *Id.* Judgments of acquittal were entered in all three cases. *Id.* at 1090.

¶ 29 The appellate court found the three cases materially indistinguishable from those in *Verstat*. *Id.* at 1096. The only difference the court identified was that the State in *Verstat* moved to nol-pros the charges. *Id.* However, the court noted that, in *Edwards*, the State also did not move to nol-pros the charges yet the appellate court presumably found this immaterial. *Id.* The *Harris* court likewise found it immaterial that the State did not move to nol-pros the charges in any of the cases. *Id.*

¶ 30 From these cases we draw the principle that, where there has been a purported "acquittal" in a criminal proceeding, the question of whether that "acquittal" followed a "trial on the merits" as understood in article VI, section 6, is equivalent to whether jeopardy attached before the "acquittal" was rendered. We recognize that *Verstat* first analyzed whether there had been a true "trial" in the case and then took up the question of whether jeopardy had attached. See *Verstat*, 112 Ill. App. 3d at 97. We do not, however, see this as authority to analyze the questions separately, for *Verstat* noted that its analysis of whether there had been a legitimate trial dispensed with the need for a double jeopardy analysis. *Id.* More importantly, the supreme court's analysis in *Deems*–which controls over any of the appellate court cases–was from the outset a double jeopardy analysis, even though the court was faced with the technically distinct questions of whether there had been an appealable dismissal under Rule 604(a)(1) and whether jeopardy had attached. See *Deems*, 81 Ill. 2d at 387-88.

¶ 31 As for when and how jeopardy attaches, the *Deems* court stressed that cases are not to

-10-

be mechanically decided by rules of thumb, *e.g.*, that jeopardy in a bench trial attaches when the first witness is sworn and the court begins to hear evidence. *Id.* at 388-89. The court acknowledged that, in the bench "trial" in the case before it, a witness was sworn. As though anticipating the argument that, in some perhaps metaphysical sense, the trial court in *Deems* had begun to hear evidence in the case, the supreme court resorted to the core principle of the double jeopardy bar, *i.e.*, that the defendant not be twice placed at risk of a determination of guilt on the same charge. The court noted that, since no evidence was produced in the case, there was no chance of a finding of guilt. *Id.* at 390. *Edwards* and *Verstat* instruct that jeopardy does not attach even when evidence is produced, if the evidence is not inculpatory.

¶ 32    Applying these guidelines as developed in *Deems*, *Edwards*, *Verstat*, and *Harris*, we hold that the "acquittal" entered by the trial court in this case was in fact a dismissal of the charges. Here, as in *Deems*, a rule of thumb of double jeopardy law is applicable, *i.e.*, that "jeopardy attaches in a jury trial when the jury is empaneled and sworn." *People v. Bellmyer*, 199 Ill. 2d 529, 538 (2002); see also *Crist v. Bretz*, 437 U.S. 28, 35 (1978) ("The reason for holding that jeopardy attaches when the jury is empaneled and sworn lies in the need to protect the interest of an accused in retaining a chosen jury."). Here, the jury was sworn and given preliminary instructions. As in *Deems* and *Harris*, however, no evidence was presented, and so there was no risk of a determination of guilt. Moreover, any risk of conviction that existed in some abstract sense was less than what was posed in *Edwards* and *Verstat*, where at least some evidence was received. Unlike in *Deems*, not even one witness was sworn in this case.

¶ 33    Though it is manifest that the essential concern of the courts in *Deems* and its progeny was whether the defendant was at risk of being found guilty, defendant trains his attention on the State's conduct, particularly those elements he considers unsavory, and in so doing misses the mark. Defendant submits that it was wrong for the State to renege on its agreement to the trial court's proposal that the jury be selected and then the State have a brief recess, before the jury was sworn, in which to decide whether to proceed with the prosecution or move to dismiss the charges. Defendant asserts that, by later moving for a postponement of the trial and refusing to participate in the proceedings past jury selection, the State "gamed the system" and wasted resources.

¶ 34    In focusing on the fairness of the State's actions rather than on whether they actually placed him at risk of a criminal conviction, defendant apparently relies on certain remarks in *Deems*. In the course of its double jeopardy analysis, the *Deems* court commented on the subjective beliefs and aims of the trial court and the State. For instance, the court remarked that the "trial" in that case was "an artifice employed by the trial judge to achieve the result of a dismissal with prejudice for want of prosecution." *Deems*, 81 Ill. 2d at 389. The court also noted that the State even admitted in open court that the defendant was not guilty of knowingly receiving stolen property. *Id.* at 390. As we read *Deems*, none of these observations was essential to the court's holding. What matters are not the motives of the parties or the trial court, but whether, from an objective standpoint, the proceedings have so advanced that the defendant is placed at risk of a criminal conviction. We see not even a hint in *Deems* that revelations of the mind-set of the parties can override objective evidence of whether the defendant was at risk of a criminal conviction. Here, under *Deems* and

-11-

subsequent cases, defendant was never at risk of a determination of guilt.

¶ 35　　　Besides focusing on the fairness of the State's actions, defendant argues that the State showed a greater commitment to seeking a criminal conviction than did the prosecution in *Deems* and the other cases. First, defendant notes what actions the State took. He points out that, unlike the prosecution in *Harris*, the State here participated in jury selection. We see no indication in *Harris*, however, that the State's refusal to participate in jury selection was a consideration in the court's decision that the judgments in the consolidated cases were dismissals rather than acquittals. Rather, the only fact the court mentioned in support of its holding was the absence of any prosecution evidence in the cases. *Harris*, 222 Ill. App. 3d at 1096. Second, defendant notes what actions the State did *not* take. He observes that the State did not move to nol-pros the charges like the prosecution in *Deems* and *Verstat*. Like the court in *Harris*, where the State also did not move to nol-pros the charges, we consider this an inconsequential difference between this case and *Deems* and *Verstat*. Hence, whatever factual differences may exist between this case and the *Deems* line of cases, the reality upon which we base our decision is that nothing in the State's action or inaction in this case placed defendant at risk of criminal conviction.

¶ 36　　　For the same reasons, we find inapposite here the principle, which defendant quotes from *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004), that "a party cannot complain of error which that party induced the court to make or to which that party consented." The petitioner in *Swope* had been committed as a sexually dangerous person. Following his commitment, the trial court granted the petitioner's request to have experts appointed to perform a reexamination of his status. *Id.* at 212. Counsel for the petitioner later informed the trial court that the petitioner's treatment team had refused to speak with the appointed experts. *Id.* Counsel then requested a subpoena in order to depose a member of the treatment team. *Id.* at 213. The trial court granted the request, and the treatment provider was deposed. *Id.* Based on the appointed experts' analysis of the information elicited during the deposition, counsel filed a petition for conditional release. *Id.* The trial court denied the petition, and the petitioner appealed, arguing that the inability of his appointed experts to interview the treatment team compromised his efforts in preparing his petition for conditional release and that the trial court denied him due process by countenancing the procedure. *Id.* at 214-15. The supreme court held that, because the petitioner's counsel asked to depose the treatment team, he was barred from arguing that the deposition process was inadequate for preparing the petition for conditional release. *Id.* at 217. The petitioner could "not now attack a procedure to which he agreed, even though that acceptance may have been grudging." *Id.*

¶ 37　　　Even if we were to agree that the State invited or acquiesced in the denial of its motion for a continuance, we would not consider the present action controlled by *Swope*. That case did not concern an appeal under Rule 604(a)(1) or raise a double jeopardy issue, and we see no indication that the supreme court in *Swope* intended the rule of invited error or acquiescence to apply in all contexts. Indeed, we see no room for that doctrine in the *Deems* analytical framework, under which jeopardy simply does not attach absent the objective possibility of a criminal conviction. Hence, the State's conduct is relevant only as it created a risk of a determination of guilt.

¶ 38　　　As for the *trial court's* purpose in acting as it did below, we acknowledge that *Deems*

remarked that the trial court in that case convened a "sham" trial, *i.e.*, a proceeding designed by the court not to adjudicate guilt or innocence based on the evidence, but to achieve what was in substance a dismissal with prejudice. See *Deems*, 81 Ill. 2d at 389. The *Deems* court's ultimate holding, however, was based not on the trial court's motives in convening the trial, but on the lack of any indication that the defendant was objectively at risk of a determination of guilt. *Edwards*, *Verstat*, and *Harris* identified the fulcrum of *Deems*' analysis, their holdings turning on whether the State's conduct created a risk of a conviction. *Verstat* did remark that the "trials" in those cases were artifices designed to achieve dismissals with prejudice, but, as in *Edwards* and *Harris,* the court's ultimate basis for holding that the "acquittals" were so in name alone was that the State "did not attempt to convict the defendants." *Verstat*, 112 Ill. App. 3d at 97.

¶ 39    In attempting to discern the place in *Deems*' analysis for the court's comment that the trial was a "sham," we reject the possibility that *Deems* was suggesting that the specific principles as to when jeopardy attaches (in the case of a bench trial, when the first witness is sworn and the court begins to hear evidence) control unless the trial court subjectively intended to convene a trial as a pretext, in which case the broader principle applies, which dictates that jeopardy attaches when there is a risk of a determination of guilt. When its analysis is read in its entirety, it is clear that *Deems* does not require any inquiry into the trial court's intentions. Even before remarking that the trial was a "sham," the court had set the roadmap for its analysis, noting that the label "acquittal" was not dispositive for double jeopardy purposes and that the proceedings below "were not an attempt by the State to convict defendant." *Deems*, 81 Ill. 2d at 389. We conclude that the court's remark that the trial was a "sham" was an incidental comment and not part of the court's holding, except insofar as it was the court's alternative way of saying that the trial proceedings had not matured to the point that the defendant was at risk of a conviction. See *Aleman*, 281 Ill. App. 3d at 1006 (defining "sham trial" as one that "results in an acquittal because the State does not submit evidence"). The reason that no trial can be said to have occurred below is not that the trial court did not really intend to have one, but that there objectively was none since the adversaries never joined. See *People v. Tribbett*, 90 Ill. App. 2d 296, 301 (1967) ("a trial is a contest held just once between well prepared adversaries of roughly equal strength"); Black's Law Dictionary 1510 (7th ed. 1999) (defining "trial" as "[a] formal judicial examination of evidence and determination of legal claims in an adversary proceeding").

¶ 40    Defendant also cites two other decisions, *People v. Holman*, 130 Ill. App. 3d 153 (1985), and *People v. Vest*, 397 Ill. App. 3d 289 (2009), which he claims are authority for holding that his trial had already started when the court entered the judgments of acquittal. We read neither case as mandating a different approach from that of *Deems*, and, of course, we could not follow them even if they did as the decisions of our supreme court control over those of the appellate court.

¶ 41    In *Holman*, at a bench trial, the State moved for a continuance after it finished the testimony of its first witness, the victim. *Holman*, 130 Ill. App. 3d at 154-55. The State represented that its two other witnesses, both police officers, were unavailable. *Id.* The court denied the motion, and the State produced no further witnesses. *Id.* at 155. The defense moved for a directed finding, which the trial court denied. *Id.* Following the defense's case,

the court entered an acquittal. *Id.* at 156. The State brought an appeal under Rule 604(a)(1), arguing that the trial court's denial of the continuance was in substance a dismissal of the State's case. *Id.*

¶ 42    The appellate court declined to interpret the trial court's action as a dismissal. The court read *Edwards* as holding that Rule 604(a)(1) permits "the State to appeal from a pretrial order denying the State a continuance in a limited situation where the effect of the trial court's ruling was to preclude the State from conducting a trial at all due to the unavailability of the State's witnesses, thereby eliminating any possibility of convicting the defendant." *Id.* at 157. The court found *Edwards* distinguishable because that case involved a "pretrial ruling." *Id.* The court did so, however, without articulating any criteria for distinguishing a "pretrial" ruling from other rulings. The court then proceeded to acknowledge that *Edwards* utilized a double jeopardy analysis in interpreting whether Rule 604(a)(1) allowed the State's appeal. *Id.* The court then determined that, under double jeopardy principles, which generally consider jeopardy as attaching in a bench trial when the first witness is sworn, jeopardy had already attached when the State's motion was denied. *Id.*

¶ 43    We do not read *Holman* as embracing a standard, independent of double jeopardy principles, for determining whether a trial court's action was an acquittal or a dismissal for purposes of Rule 604(a)(1) and article VI, section 6, of the Illinois Constitution. *Holman* did appear to render separate holdings that the trial court's ruling was "pretrial" and that the ruling was made after jeopardy attached. This was appearance alone, for *Holman* relied on *Edwards* in holding that the ruling was not "pretrial," and *Edwards*, following *Deems*, subsumed the Rule 604(a)(1) issue under a double jeopardy analysis. *Holman*, therefore, is in line with *Deems*.

¶ 44    Defendant claims that *Vest* held that "a trial begins when jury selection commences." *Vest* did so hold, but in a relevantly different context than here. The issue in *Vest* was when a trial may be considered to begin for purposes of the rule that, if the defendant moves pretrial to dismiss an allegedly defective charging instrument, he need not show prejudice, but must show prejudice from the defective instrument if the motion is brought after the trial's start. *Vest*, 397 Ill. App. 3d at 291. After considering various proposals for demarcating when a trial begins, the court settled on the rule that a trial starts when *voir dire* begins. *Id.* at 295. In evaluating the options, the court considered whether to simply adopt the standard for when jeopardy attaches, but concluded that these criteria were not apt for addressing the interests at hand:

> "Because *** the critical point for the attachment of jeopardy is the point at which a body has been constituted that has the power to convict the defendant, double-jeopardy cases are not reliable guides to what marks the start of *trial*." (Emphasis in original.) *Id.* at 292.

¶ 45    *Vest* is inapposite. The case did not involve a State appeal, and there was no issue involving Rule 604(a)(1). Moreover, *Vest* drew a clear line between the interests protected by the double jeopardy bar and the interests implicated when a defendant moves to dismiss a charging instrument. Significantly, defendant cites *Vest* in passing and does *not* argue that *Vest* should control here because the interests at issue there are more analogous to those

-14-

implicated by article VI, section 6, than to those implicated by the double jeopardy clause. That argument is, in any event, foreclosed by *Deems*, according to which the question of whether a trial court's action was an acquittal or a dismissal is controlled by the double jeopardy principles that determine when jeopardy attaches in a proceeding. Even if, as we doubt, *Vest* may be read as conflicting with *Deems*, we must follow the decisions of our supreme court over those of the appellate court.

¶ 46 *Deems* and its progeny dictate here that, because no witnesses were sworn and the State presented no evidence, jeopardy never attached and, therefore, the trial court's action was an appealable dismissal of the charges rather than a nonappealable acquittal. We conclude that we have jurisdiction under Rule 604(a)(1).

¶ 47 II. MOTION FOR CONTINUANCE

¶ 48 Having determined that we have jurisdiction because the trial court's action was an appealable dismissal under Rule 604(a)(1), we reach the State's argument that the trial court erred in refusing to grant its motion for a continuance. Motions for continuances in criminal cases are governed by section 114-4 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/114-4 (West 2004)). See *People v. Sullivan*, 234 Ill. App. 3d 328, 331 (1992). Subsection (e) of section 114-4 states in relevant part:

> "All motions for continuance are addressed to the discretion of the trial court and shall be considered in the light of the diligence shown on the part of the movant. Where 1 year has expired since the filing of an information or indictments, filed after January 1, 1980, if the court finds that the State has failed to use due diligence in bringing the case to trial, the court may, after a hearing had on the cause, on its own motion, dismiss the information or indictment. ***
>
> After a hearing has been held upon the issue of the State's diligence and the court has found that the State has failed to use due diligence in pursuing the prosecution, the court may not dismiss the indictment or information without granting the State one more court date upon which to proceed. Such date shall be not less than 14 nor more than 30 days from the date of the court's finding. If the State is not prepared to proceed upon that date, the court shall dismiss the indictment or information, as provided in this Section." 725 ILCS 5/114-4(e) (West 2004).

The next paragraph, subsection (f), provides: "After trial has begun a reasonably brief continuance may be granted to either side in the interests of justice." 725 ILCS 5/114-4(f) (West 2004).

¶ 49 The parties disagree over whether the State's motion for a continuance was addressable under subsection (e) or instead subsection (f). The parties cite no case law on the interplay between these two subsections, and our own research has not uncovered any. Reading subsections (e) and (f) as complementary, defendant infers that, because subsection (f) expressly governs continuances requested "[a]fter trial has begun," subsection (e) is limited to continuances sought *before* trial. Defendant further reasons that, because *Vest* instructs that a trial commences when *voir dire* begins, and because the State filed its continuance motion after jury selection, the State was not entitled to the "automatic continuance"

-15-

mandated by the second paragraph of subsection (f) (see *Harris*, 222 Ill. App. 3d at 1096), according to which the trial court, even if it finds that the State failed to show due diligence, must allow the State "one more court date upon which to proceed," which "shall be not less than 14 nor more than 30 days from the date of the court's finding" on the State's diligence (725 ILCS 5/114-4(e) (West 2004)). (There is no dispute that, under the first paragraph of subsection (e), the indictment was filed more than a year before the State filed the motion at issue.) Defendant concludes that, because the State filed its motion for a continuance after the jury was selected, the motion was governed by subsection (f) and, therefore, the State did not have the benefit of a "last chance" continuance but, in order to obtain any continuance, had to establish that it acted diligently and that a continuance would be in the interests of justice.

¶ 50        We interpret a statute according to the plain and ordinary meaning of its terms, but we will not accept a reading that produces an absurd result. *People v. Williams*, 239 Ill. 2d 119, 127 (2010). Therefore, we cannot agree with defendant that subsections (e) and (f) are mutually exclusive. Defendant's interpretation would have the absurd result that the State could avoid a trial court's *sua sponte* dismissal, authorized by subsection (e), simply by waiting until after trial began to file its motion for a continuance, thus finding haven under subsection (f). The applicability of subsection (e) does not hinge on when the motion is filed, but is self-executing, coming into play simply where one year has expired since the filing of the information or indictment, filed after January 1, 1980. 725 ILCS 5/114-4(e) (West 2004). Of course, in this case, because of the time that had passed since the State filed the indictment, the merits of the State's continuance motion were intertwined with the standard governing dismissals under subsection (e).

¶ 51        Though the application of subsection (e) does not depend on when a continuance motion, if any, is filed, it seems to follow from the structure of section 114-4 that a motion may be subject to both subsection (e) and subsection (f) if it is filed after the trial begins. In this case, however, subsection (f) did not apply. Subsection (f) provides for only a "reasonably brief continuance," an appropriate limitation if the trial is *in media res*. Citing *Vest*, defendant argues that a jury trial begins for purposes of subsection (f) when jury selection commences. We assume, without deciding, that trial begins for purposes of subsection (f) when *voir dire* begins, and we conclude that the State did file its motion before *voir dire*. The State did not file its *written* motion until after *voir dire*, but the grounds for that motion, *i.e.*, the absence of material witnesses, were the same as those presented in the State's oral motion made earlier that morning when the case was called. We do not fault the State for waiting to prepare a written motion until after the case was called and it was confirmed that the witnesses still were not present. See *People v. Peruscini*, 188 Ill. App. 3d 803, 807 (1989) (failure to put continuance request in writing may be excused in extenuating circumstances). It appears the State prepared the written motion at the first opportunity.

¶ 52        Defendant also criticizes the State for moving for a postponement of the trial after previously agreeing that, following jury selection and a brief recess, it would either proceed to trial or dismiss the case. In fact, the defense also objected to proceeding to trial and requested a continuance because defendant had not yet arrived. See 725 ILCS 5/114-1 (West 2004). The trial court abused its discretion in forcing the parties to trial when each had a

sound statutory basis for a continuance. First, since the State did not attempt, under section 115-4.1 of the Code (725 ILCS 5/115-4.1 (West 2004)), to establish grounds for trying defendant *in absentia*, it was error for the trial court to decide to proceed with jury selection (see *People v. Ramirez*, 214 Ill. 2d 176, 183 (2005) (section 115-4.1 "is part of a larger legislative scheme that allows a trial to proceed in the defendant's absence while ensuring that the accused's constitutional right to be present at trial and confront his accusers is not compromised in the process")).

¶ 53    Second, the trial court further erred in denying the State's later, written motion for a continuance. The grounds on which the State moved for a postponement should have been no surprise to the defense, which was on notice from the call of the case that material witnesses for the prosecution were absent and might continue to be absent. Because the State's motion was *not* filed after the trial began, the motion was governed by the general standards in section 114-4 but *not* also by the particular standards in subsection (f) applying to motions made after trial has begun.

¶ 54    Turning to those general principles, we note that subsection (c)(2) permits the State to move for a continuance where "[a] material witness is unavailable and the prosecution will be prejudiced by the absence of his testimony." 725 ILCS 5/114-4(c)(2) (West 2004). The State's written motion represented that Binion and Scott both were material witnesses, that their absence would "greatly prejudice" the State's case, and that a continuance would not "greatly prejudice" the defense. Defendant did not dispute these representations below and does not do so now. Subsection (e) states that "[a]ll motions for continuance are addressed to the discretion of the trial court and shall be considered in the light of the diligence shown on the part of the movant." 725 ILCS 5/114-4(e) (West 2004). "It is well settled that the granting or denial of a continuance is a matter resting in the sound discretion of the trial court, and a reviewing court will not interfere with that decision absent a clear abuse of discretion." *People v. Walker*, 232 Ill. 2d 113, 125 (2009). Factors to consider in whether to grant a continuance include the movant's diligence, the defendant's right to a speedy, fair, and impartial trial, and the interests of justice. *Id.*

¶ 55    In denying the State's written motion for a continuance that was filed after jury selection, the trial court made the following findings:

"The case before the Court began on July 7, 2006. In two months we will then be embarking upon half a decade of pending a [*sic*] Class 3 felony. [Binion and Scott] are well known in Elgin, both are convicted felons. One would believe that the Elgin Police Department would know their whereabouts. They were ordered to be in court today. The Court will issue body writs for both of these gentlemen.

In addition, the State's list of witnesses indicates twelve witnesses. Excluding Mr. Scott and Mr. Binion, that's ten witnesses. The Court would anticipate it would take every bit of today and most of tomorrow to get through ten witnesses. By then the People may have had a chance to execute the arrest warrant body writs for these two gentlemen."

After a recess of 15 or 20 minutes, the court remarked that it believed it would be a "waste of time" to grant the State any additional time.

¶ 56    These findings did not justify the action taken by the trial court in forcing the matter to

-17-

trial. The court noted that the case had been on its docket from July 2006 to May 2010. The State, however, did not file its first continuance motion until July 20, 2009–more than three years into the prosecution. The delay up to that point either was occasioned by defendant alone, was due to ongoing plea negotiations, or was due to reasons not apparent from the record. From November 9, 2006, to August 2, 2007, all continuances were by agreement and were due in part to defendant's switching counsel and to plea conferences under Rule 402, which took place both before and after defendant switched attorneys. From August 2, 2007, to July 2008, defendant did not appear in court, and he was ultimately arrested.[2] Between July and September 2008, defendant was arraigned again, posted bond, and was appointed counsel. On September 8, 2008, defendant filed his demand for a speedy trial. Between September 8, 2008, and May 7, 2009, there were six agreed continuances, the grounds for which are not indicated in the record. On May 7, 2009, after the State made its election to proceed on the case, the trial court set a trial date (August 3, 2009) for the first time in the case. The four continuances that the State requested between July 20, 2009, and May 17, 2010 (the date the "acquittal" was entered), caused roughly 20 weeks of delay. To place it in better perspective, the State caused 5 months of the total 46 months of delay in the case. The larger part of that five months of delay was requested due to the State's failure to locate the victims, Binion and Scott. The State did not fail to attempt to secure their appearance, but subpoenaed them for all trial dates. (A subpoena to Binion for the May 17, 2010, trial date does not appear in the record, but there is no dispute that the subpoena was issued.) *Cf. People v. Boland*, 205 Ill. App. 3d 1009, 1014 (1990) ("Failure to subpoena a witness suggests a lack of diligence, unless counsel has a reasonable expectation that the witness will appear without a subpoena and the witness is delayed by last-minute events."). The State, we conclude, showed proper diligence.

¶ 57    As for defendant's interest in a speedy trial, we note that he caused twice as much delay by his failure to appear as the State caused in trying to locate Binion and Scott. Also, defendant did not file his speedy-trial demand until September 8, 2008–more than two years into the prosecution. Defendant quotes from *Murray* that, "[e]ven when there has been no acquittal[,] an accused has some right to have his trial concluded before the first jury that is impanelled" (*Murray*, 306 Ill. App. 3d at 283). In actuality, this is a principle that guides when jeopardy attaches, and that is not the issue here. To the extent the principle may state a general interest of a criminal defendant, it carries little force here since, in view of the months of delay he himself caused, defendant can hardly be heard to complain that a further postponement for the securing of material witnesses was unacceptable.

¶ 58    As for the trial court's proposal that the State open the trial with other witnesses while waiting for Binion and Scott, the scheduling of witnesses and the order in which they are called are up to the parties, not the court. While the court's proposal was not unreasonable,

---

[2] In his appellate brief, defendant does not even acknowledge his prolonged absence from the proceedings. His insinuation that the delay before trial was largely the State's fault is not well taken. (We note particularly this statement in the fact section of defendant's brief: "By September 8, 2008, the defendant had still not been tried.") We expect greater candor from litigants in this court.

it was the State's decision whether to accept or reject it. The court "was without authority to assume the mantle of prosecutor" and dictate, over the State's objection, that trial commence in the absence of witnesses the State deemed crucial. *Edwards*, 97 Ill. App. 3d at 412 (trial court erred in denying continuance motion premised on absence of arresting officers); *cf. People ex rel. Daley v. Moran*, 94 Ill. 2d 41, 46 (1983) ("A trial judge cannot, consistent with the constitutional principle of separation of powers, assume the role of prosecutor and determine which criminal offense shall be charged and thereafter proceed with disposition of that offense over the State's objection ***."). It was for the prosecution to decide whether it should proceed with the other witnesses and thus run the risk that jeopardy would attach without Binion and Scott ever appearing. In view of the State's diligence and defendant's hindering of the proceedings, the interests of justice would have been far better served by continuing the matter while the authorities sought to compel Binion's and Scott's presence by force.

¶ 59 We stress that we do not condone the State's agreeing to participate in jury selection in the first place. Given the unlikelihood that Binion and Scott would appear voluntarily, the State should have moved for a continuance and refused altogether to participate in the trial.

¶ 60 The last point we wish to stress is that, though we hold that the State was entitled to a continuance by its showing of due diligence, even failing that showing the State would have been entitled to "one more court date upon which to proceed," which had to be "not less than 14 nor more than 30 days from the date of the court's finding" that the State did not show due diligence. 725 ILCS 5/114-4(e) (West 2004). The trial court evidently did not consider this provision. Of course, where, as here, the State shows due diligence, the trial court is not limited under the statute to the 30-day maximum for a continuance.

¶ 61 We are mindful of defendant's statutory speedy-trial right, though the parties did not mention that right until oral argument and seemed to agree that approximately 10 days remained in the speedy-trial term. (We have not calculated the balance for ourselves.) If indeed the expiration of the term was imminent, the State still had means to seek, and the trial court to grant, a continuance. The State had proven its entitlement to both a "due diligence" continuance and a "last chance" continuance under section 114-4(e), either of which the trial court had authority to grant within the speedy-trial time. See *Verstat*, 112 Ill. App. 3d at 98 ( "a trial court should deny continuances sought by the State [under section 114-4] where a defendant's right to a speedy trial *** will be improperly obstructed"). We stress that, under the "last chance" provision of section 114-4(e), the trial court would *not* have been constrained to grant the minimum 14-day postponement if that would have taken the trial beyond the speedy-trial term. Rather, the court would have been constrained *not* to. See *id.*; *People v. Macklin*, 7 Ill. App. 3d 713, 716 (1972) ("both the People and the Courts have the obligation to afford a defendant his statutory rights, as well as give him a speedy trial"). The court could have granted a "last chance" postponement of less than 14 days if needed to honor defendant's speedy-trial right. In this way the court would have served the overarching purpose of section 114-4, which is to ensure that "criminal cases are tried with due diligence consonant with the rights of *the defendant and the State* to a speedy, fair and impartial trial" (emphasis added) (725 ILCS 5/114-4(h) (West 2004)). The State also had recourse to section 103-5(c) of the Code (725 ILCS 5/103-5(c) (West 2004)), the Speedy

Trial Act, which permitted the State, upon a showing of due diligence, to obtain up to a 60-day continuance to procure "material" evidence, during which period the speedy-trial term would have been tolled.

¶ 62    For the foregoing reasons, we reverse the judgment of the circuit court and remand this case for the setting of a trial date with all due regard for the State's as well as defendant's interests.

¶ 63    Reversed and remanded with directions.

¶ 64    JUSTICE McLAREN, specially concurring:

¶ 65    I specially concur because I wish to distance myself from some of the analysis regarding the court's denial of the State's motion for a continuance. I concur generally because I believe that the court was wrong to find that a continuance would be a waste of time; I do not believe that this underlying finding is supported by the evidence. The court's finding is against the manifest weight of the evidence, and that affects the ultimate exercise of discretion. See *People ex rel. Sussen v. Keller*, 382 Ill. App. 3d 872, 878 (2008) (the court "will review the trial court's factual findings under the manifest-weight-of-the-evidence standard, but we review the court's ultimate determination for an abuse of discretion"). Moreover, the court should have made the State pick a date certain for the continuance of the trial. Failing to do so essentially placed the exercise of discretion in a vacuum. The failure of the court to require the State to pick a date essentially resulted in no exercise of discretion. As such, the denial should be vacated, rather than reversed, so that the court may reconsider the State's motion in the context of a real future date, and its decision can be reviewed based upon the totality of the circumstances.

¶ 66    Unfortunately, there are aspects of the majority analysis that attempt to make the trial court's "exercise" of discretion worse than it was. The record indicates that the State made an oral motion for a continuance that was denied before the start of the trial. The State then presented a written motion after the start of the trial, which would make section 114-4(f) of the Code pertinent. I believe that the trial court, under the particular circumstances of this case, was attempting to accommodate the parties. If necessary witnesses were not available after all the other evidence had been presented by the State, then a motion for a continuance under section 114-4(f) would have been in the interest of justice, as the speedy-trial term would have expired in the very near future. The State's action of requesting a continuance without designating a future date certain suggests that the State was more concerned with double jeopardy than with the speedy-trial term running. I submit that the trial court was dealing with the State's location between a rock and a hard place more reasonably than was the State. The trial court was attempting to accommodate the State, but the State was unsure when it would locate and secure the witnesses. That is apparent from the fact that the motion for a continuance did not contain a date certain for the trial. It is difficult to conclude, as the majority does, that the State "was entitled to a continuance" when the State's prayer for relief was incomplete. This is especially true when less than two weeks remained in the speedy-trial term. The trial court was put in the position of weighing undefined factors that the

-20-

majority disregards but determines the trial court improperly considered. Without a date certain, there is no benchmark to measure against if the court denies, grants, or partially grants the relief that was vaguely requested. If anything, this is a procedural default committed by the State that should not go unrecognized.

¶ 67        The majority analysis covers matters that I do not believe should be included in the disposition. The discussion in paragraphs 60 and 61 regarding the possible right to alternative continuances is inappropriate under the facts as speculative and a prejudgment of matters *in futuro*. Without a date or a rationale given by the State, the majority has taken upon itself to prejudge what has not yet occurred, let alone been raised by the State. The majority states that the "court evidently did not consider" the provision of section 114-4(e) of the Code entitling the State to "one more court date upon which to proceed." (Internal quotation marks omitted.) *Supra* at ¶ 60. I submit that the consideration of a "provision" not argued or raised by the State is not error but judicial restraint. If the majority wishes to educate the State as to how it should prosecute its cases, it should choose a more appropriate forum than this disposition. Why the majority is suggesting that the State could win a battle and lose a war under this provision should be noted as Pyrrhic *dicta*. If the trial court had considered and granted such a continuance, it would have been interesting to see what the State's response would have been after the court subsequently dismissed the case due to a speedy-trial violation. If the trial court had considered and denied such a continuance, the resolution would have established the innocuousness of the majority's comment. The alternative relief proposed by the majority for a continuance beyond the speedy-trial deadline was not broached by the State, and the pre-adjudication of such a hypothetical request is inappropriate. Judicial economy encompasses neither telling the State how to best prosecute its case nor what the trial court should do relative to an exercise of discretion. The majority apparently thinks that the trial court must grant whatever relief is sought. There is no citation to authority that indicates that the State would be entitled to a continuance to a date when the judge is unavailable or any other matter that could affect any relief sought by the State. If the majority believes that there is still some discretion to be exercised by the trial court in scheduling the trial, it is not evident in its disposition.

¶ 68        Rather than determining that the trial court abused its discretion, I would determine that the particular facts and circumstances were inappropriate for a meaningful exercise of discretion by the trial court. I would vacate and remand the cause for further proceedings. See *In re Application of the County Collector*, 343 Ill. App. 3d 363, 371 (2003) (the lack of specificity precluded the court from considering the totality of the circumstances and thus the exercise of discretion was improper).