# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *People v. Martinez*, 2013 IL 113475

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ESTEBAN MARTINEZ, Appellant. |
| | |
| Docket No. | 113475 |
| | |
| Filed | April 18, 2013 |
| Rehearing denied | May 28, 2013 |
| | |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where jury selection began while waiting for the State's witnesses to appear, but, when it was time to swear the jury, the State said that it would not participate and the jury was sworn, but the case was dismissed, jeopardy did not attach and the order was appealable—remand for setting of date for trial at which the proper written procedures for continuances should be followed. |
| | |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Kane County, the Hon. Timothy Q. Sheldon, Judge, presiding. |
| | |
| Judgment | Appellate court judgment affirmed.<br>Circuit court judgment vacated.<br>Cause remanded. |

Counsel on
Appeal

Michael J. Pelletier, State Appellate Defender, Thomas A. Lilien, and Alan D. Goldberg, Deputy Defenders, and Darren E. Miller, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Elgin, for appellant.

Lisa Madigan, Attorney General, of Springfield, and John A. Barsanti, State's Attorney, of Geneva (Michael A. Scodro, Solicitor General, and Michael M. Glick and Karl R. Triebel, Assistant Attorneys General, of Chicago, of counsel), for the People.

Justices

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Thomas, Garman, Karmeier, and Theis concurred in the judgment and opinion.

Justice Burke dissenting, with opinion.

## OPINION

¶ 1    This appeal presents the sole issue of whether the State may appeal from an order of the circuit court of Kane County denying its motion to continue trial and directing a verdict in favor of defendant, Esteban Martinez. The appellate court answered this question in the affirmative. For the reasons that follow, we affirm the judgment of the appellate court.

¶ 2                                    BACKGROUND

¶ 3    On August 9, 2006, defendant was indicted for committing aggravated battery (720 ILCS 5/12-4(a) (West 2010)) and mob action (720 ILCS 5/25-1(a)(1) (West 2010)) against Avery Binion and Demarco Scott. Defendant was arraigned on November 9, 2006.

¶ 4    The record reflects that between the time of arraignment in November 2006 and the date of defendant's trial in May 2010, a series of continuance motions was filed by both defendant and the State for various reasons.[1] The instant appeal revolves around occurrences that took

---

[1]In its opinion, the appellate court chronicled the continuances requested in this case. From November 2006 to August 2007, all continuances were by agreement and due in part to defendant's retention of new counsel and to plea conferences under Rule 402. From August 2007 to July 2008, defendant did not appear in court and ultimately was arrested. Between July and September 2008, defendant was arraigned again, posted bond and was appointed counsel. On September 8, 2008, defendant filed his demand for a speedy trial. Between September 8, 2008, and May 7, 2009, there were six agreed continuances, the grounds for which are not included in the record. On May 7, 2009, the trial court set the first trial date in this case for August 3, 2009. Between July 20, 2009, and May

place on defendant's trial date of May 17, 2010. At 8:30 a.m., defendant's case was called for jury trial. At that time, the following colloquy occurred between the court, the prosecutor and defense counsel:

"THE COURT: This cause is set for jury trial this morning. It is 8:30, the time in which we are scheduled to start.

[The Prosecutor]: Yes, your Honor. At this time the State is not ready. We would be asking for a continuance even just for a few moments, or if we could have just a little bit longer to see if our witnesses are arriving. They are not here yet. I am hopeful that they will be here today.

THE COURT: Well, here's what I can do for you. *** I don't wish to wait all morning long for these people to stroll in, but I will allow us to get started, but I won't swear the panels until I have a whole jury. How is that?

[The Prosecutor]: Yes, your honor. If we could not swear them, and before swearing them if I could have a momentary recess.

THE COURT: What I'll do is we'll pick a panel, send them back, pick the next panel, send them back, pick the last panel, send them back, pick your alternate or alternates, send them back. I'll give you ten minutes, bring them out and swear them in or move to dismiss your case if you wish.

[The Prosecutor]: Thank you, your honor.

[Defense Counsel]: Judge, for the record, I am objecting, I'm asking for a continuance. My client is not present yet. I certainly would ask for a short period of time if my continuance is not granted for him to be present before selecting the jury due to the prejudice that will occur even if he arrives late. That's my request, Judge.

THE COURT: Motion denied. As soon as the jury is up, we're going to start."[2]

¶ 5        After this exchange, the parties proceeded to select a jury. Upon conclusion of that process, the following exchange occurred:

"THE COURT: Counselors, I'm going to call all the cases that I had scheduled on my docket, which will give you a little extra time. Have your witnesses arrived?

[The Prosecutor]: No, your Honor, and the State does have a motion to continue that we would like to file with you.

THE COURT: Yes. Come on forward. All right. The People have filed a motion

_____

17, 2010, the State requested four continuances, in large part due to their inability to locate the victims, Binion and Scott. 2011 IL App (2d) 100498, ¶ 56. The parties do not dispute the appellate court's conclusion that of the total 46 months of delay in this case, 5 months of that delay was attributable to the State. *Id*.

[2]Though the record does not reflect the precise time of defendant's appearance in court, he apparently arrived while the jury was being selected.

-3-

to continue.[3]

[The Prosecutor]: Your Honor, it is now 10:06. We have not seen the victim in this case, Demarco Scott, or another victim, Avery Binion, both witnesses. We are unable to proceed without them, and we would be asking for a continuance.

THE COURT: Have you sent the police to knock on their door?

[The Prosecutor]: I believe we've been checking on that and unable to locate them as of now. They also have cases that are up before your Honor this morning.

THE COURT: Yes, they have. And I will call People versus Avery Binion, Jr., 10 CC 20 *** [and] People versus Demarco Scott, 10 CC 19. You have service on both these gentlemen?

[The Prosecutor]: Mr. Scott, I believe, was served some time ago. They both did appear last week in court, were given court orders to appear today.

THE COURT: Okay. Anything further you would like to say on your motion to continue?

[The Prosecutor]: No, your Honor.

THE COURT: Defense?

[Defense Counsel]: Judge, we certainly are objecting to any continuance[.] ***

THE COURT: I will make these findings: The case before the court began on July 7, 2006. In two months we will then be embarking upon half a decade of a pending Class 3 felony. Avery Binion, Jr., and Demarco S[cott] are well known in Elgin, both are convicted felons. One would believe that the Elgin Police Department would know their whereabouts. They were ordered to be in court today. The Court will issue body writs for both of these gentlemen.

In addition, the State's list of witnesses indicates twelve witnesses. Excluding Mr. Scott and Mr. Binion, that's ten witnesses. The Court would anticipate that it would take every bit of today and most of tomorrow to get through ten witnesses. By then the People may have had a chance to execute the arrest warrant body writs for these two gentlemen.

The Court will deny the motion for continuance. I will swear the jury in in 15, 20 minutes. Perhaps you might want to send the police out to find these two gentlemen."

¶ 6    The court then took a brief recess. When the proceedings resumed, the following exchange took place:

"THE COURT: Shall I bring the jury in to swear them in or would a continuance

---

[3]The record contains the written motion for continuance presented by the State. It requests that the court continue defendant's trial because two of the State's "material witnesses"—Scott and Binion—had "not appeared for trial" and the State would be "greatly prejudiced if not granted a continuance." The motion further stated that "[a] continuance will not greatly prejudice the defendant and is not offered solely to delay this cause or bring undue harassment upon the defendant."

to 1:30 be of any help?

[The Prosecutor]: I'm not sure if it would be helpful or not. Obviously, the State would like the continuance to see if we can get our witnesses here.

THE COURT: My concern is will this be a further waste of time and that you're not going to get any cooperation out of these two witnesses?

[The Prosecutor]: Their whereabouts are unknown. We have had our officers look into it, and their whereabouts at this time are unknown. I do not know.

THE COURT: Okay. So you don't have any knowledge of where they are, so 1:00 would be a further waste of time as far as getting this matter—

[The Prosecutor]: As far as the officers being able to locate them, yes. The officers are unable to locate them. However, if they appeared on their own will between now—

THE COURT: And they haven't. It's a quarter to eleven and they have not appeared on their own will, so I'm going to bring the jury in now to swear them.

[The Prosecutor]: Okay. Your Honor, may I approach briefly?

THE COURT: Yes.

[The Prosecutor]: Your Honor, just so your honor is aware, I know that it's the process to bring them in and swear them in; however, the State will not be participating in the trial. I wanted to let you know that.

THE COURT: Very well. We'll see how that works.

[The Prosecutor]: Yes, your Honor."

¶ 7    According to the report of proceedings, "the jurors were duly sworn by the clerk." The court then provided the jurors with general, preliminary instructions. Thereafter, the court indicated to the State that it could proceed in presenting its case in chief. The following exchange then occurred:

"[The Prosecutor]: Your Honor, respectfully, the State is not participating in this case.

THE COURT: Defense?

[Defense Counsel]: Judge, we would waive opening statement.

THE COURT: The People may call their first witness.

[The Prosecutor]: Respectfully, your Honor, the State is not participating in this matter.

THE COURT: Does the defense wish to be heard?

[Defense Counsel]: I do, Judge.

THE COURT: Ladies and Gentlemen, we'll take a ten-minute break."

¶ 8    Upon the jurors leaving the courtroom, the following exchange occurred:

"[Defense Counsel]: Judge, the jury has been sworn. The State has not presented any evidence. I believe they've indicated their intention not to present any evidence or witnesses.

-5-

Based on that, Judge, I would ask the Court to enter directed findings of not guilty to both counts, aggravated battery and mob action.

THE COURT: Do the People wish to reply?

[The Prosecutor]: No, your Honor. Respectfully, the State is not participating.

THE COURT: The Court will grant a motion for a directed finding and dismiss the charges."

¶ 9   The jury was then called back into the courtroom. The court stated:

"Ladies and gentlemen of the jury, the State has chosen not to participate in this case. They have chosen to call no witnesses to testify. As a result, the Court has directed a verdict in favor of the defendant. The case is dismissed against the defendant."

The court then entered a written order stating that the "matter is dismissed."

¶ 10   The State thereafter filed a certificate of impairment and a notice of appeal.

¶ 11   In the appellate court, the State argued that the circuit court abused its discretion in refusing to grant its motion for continuance on the day of trial. Defendant countered that the appellate court lacked jurisdiction over the State's appeal because defendant had been acquitted of the charges. In the alternative, defendant contended that the circuit court correctly denied the State's continuance motion.

¶ 12   Relying primarily upon our decision in *People v. Deems*, 81 Ill. 2d 384 (1980), the appellate panel determined that, because jeopardy never attached in the proceedings held in the circuit court, that court's action was an appealable dismissal of the charges rather than a nonappealable acquittal. 2011 IL App (2d) 100498, ¶ 46. After concluding that it had jurisdiction to hear the appeal, the appellate panel further held that the circuit court erred in denying the State's motion for continuance. *Id*. ¶¶ 52-53. Accordingly, the appellate court reversed the judgment of the circuit court and remanded this cause for the setting of a new trial date. *Id*. ¶ 62.

¶ 13   We granted defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

¶ 14                                                    ANALYSIS

¶ 15   The sole issue raised by defendant is a narrow one: whether the State may appeal the circuit court's action in directing verdicts in favor of defendant after the State indicated it would not participate in the proceedings.[4]

¶ 16   Defendant contends that the State is barred from appealing the circuit court's action because it constituted an acquittal of all charges against him. Although the State premised its request for review of the circuit court's judgment upon our Rule 604(a)(1) (Ill. S. Ct. R. 604(a)(1) (eff. July 1, 2006)), which permits appeal where criminal charges are dismissed,

---

[4]Defendant has abandoned the argument he raised in the appellate court that the circuit court correctly denied the State's motion to continue the trial. Accordingly, the propriety of the circuit court's ruling on the State's continuance motion is not before us.

defendant contends that he was placed in jeopardy and, because jeopardy attached, the order of the circuit court was an acquittal, the appeal of which is prohibited under the principles of double jeopardy.

¶ 17    In response, the State contends that it may appeal from the circuit court's order because jeopardy did not attach. The State observes that although the prosecutor participated in jury selection, once the court denied her motion for a continuance, which was presented prior to the jury being sworn, she made it clear that the State would not participate in the proceedings to any extent. Under these specific facts, the State contends that once it ceased participation, defendant faced no possibility of conviction. The State contends that, under our decision in *Deems*, because there was no adversarial trial of the charges against defendant and no risk he would be convicted, defendant was never placed in jeopardy. Accordingly, the State concludes, the directed verdicts of not guilty had the legal effect of a judicial dismissal, not an acquittal, and the circuit court's judgment was appealable under Rule 604(a)(1).

¶ 18    We begin by noting that section 114-4 of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-4 (West 2010)) sets forth the procedural framework to be used when a motion for continuance is sought. Subsection (a) of section 114-4 provides that either the State or the defendant may make such a motion, but, if that request comes more than 30 days after arraignment, as it did here, "the court shall require that it be in writing and supported by affidavit." 725 ILCS 5/114-4(a) (West 2010). The statute further provides that "[a]ll motions for continuance are addressed to the discretion of the trial court and shall be considered in the light of the diligence shown on the part of the movant." 725 ILCS 5/114-4(e) (West 2010). In order for the court to determine the movant's diligence, the statute requires that a hearing be held. *Id*. If the court finds, after the hearing, that the State has failed to use due diligence in bringing the case to trial, the court may, on its own motion, dismiss the case. *Id*. However, the statute further provides that the court may only do so after granting the State one more court date upon which to proceed. *Id*. Such date shall not be less than 14 nor more than 30 days from the date of the court's finding. *Id*. Upon that date, if the State is not prepared to proceed, the court is then required to dismiss the case. *Id*. The statute "shall be construed to the end that criminal cases are tried with due diligence consonant with the rights of the defendant and the State to a speedy, fair and impartial trial." 725 ILCS 5/114-4(h) (West 2010).

¶ 19    The procedure set forth in section 114-4 was not followed in this case. Here, at 8:30 a.m. on the day of defendant's trial, the State did not submit a written motion for a continuance, as required under the statute, but made an oral motion to continue the trial, "just for a few moments" to await arrival of their witnesses, Binion and Scott.[5] In response, the court, rather than require the State to present a motion in writing and thereafter conduct a hearing upon the question of the State's due diligence as mandated under the statute, engaged in jury

---

[5]Subsection (c) of section 114-4 provides that a court may grant a written motion by the State made more than 30 days after arraignment where "[a] material witness is unavailable and the prosecution will be prejudiced by the absence of his testimony." 725 ILCS 5/114-4(c)(2) (West 2010).

selection in an apparent effort to move the case forward. After the parties selected the jury, they took a brief recess, as agreed. It was upon the resumption of the proceedings, but before the jury being sworn, that the State filed a written motion to continue the case, based upon the nonappearance of its witnesses. The circuit court denied the State's motion, but did so without conducting the due diligence hearing required under section 114-4(e). Notably, the circuit court based its denial upon the fact that the case had been long pending, which likely indicates a belief by the court that there was a lack of due diligence on the part of the State. If the court had followed the procedure required under the statute by conducting a due diligence hearing and subsequently finding that the State failed to establish due diligence, the court could not have dismissed the case without granting the State one additional court date upon which to proceed.

¶ 20    Because the appropriate procedures as set forth by section 114-4 were not followed in the circuit court, we are left in the procedural posture of addressing the question of whether the circuit court's directing of a verdict on behalf of defendant constitutes an appealable dismissal under Rule 604(a)(1) or a nonappealable acquittal.

¶ 21    The constitutional authority of the State to file appeals in criminal actions is set forth in article VI, section 6, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VI, § 6 provides that "[a]fter a trial on the merits in a criminal case, there shall be no appeal from a judgment of acquittal." Our Rule 604(a)(1) provides clarification with respect to the scope of the State's authority to request appellate review in criminal matters: "In criminal cases, the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge for any of the grounds enumerated in section 114-1[6] of the Code of Criminal Procedure of 1963 [725 ILCS 5/114-1 (West 2010)] ***." Ill. S. Ct. R. 604(a)(1) (eff. July 1, 2006). We have interpreted Rule 604(a) as "not intended to reduce the State's right of appeal to only those grounds enumerated in section 114-1[;] *** [r]ather, the State has the right to appeal from 'any judgment the substantive effect of which resulted in the dismissal of an indictment, information or complaint.' " *People v. Boyt*, 109 Ill. 2d 403, 411 (1985) (quoting *People v. Love*, 39 Ill. 2d 436, 439 (1968)). Questions of jurisdiction are legal matters reviewed *de novo*. *People v. Marker*, 233 Ill. 2d 158, 162 (2009).

¶ 22    The prohibition against the State appealing an acquittal is grounded in the principle of double jeopardy. In explaining the principles animating the double jeopardy clause, the Supreme Court has stated:

" 'The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' " *United States v. Scott*, 437 U.S. 82, 87 (1978) (quoting *Green v. United States*, 355 U.S. 184, 187-88

[6]Section 114-1 sets forth 11 grounds upon which an indictment, information or complaint may be dismissed.

(1957)).

See also *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569 (1977) (quoting *United States v. Wilson*, 420 U.S. 332, 339, 346 (1975) (double jeopardy protection is directed against "multiple trials")).

¶ 23　In order to trigger the protections of the double jeopardy clause, there must first be an "attachment of jeopardy." *Serfass v. United States*, 420 U.S. 377, 388 (1975). Generally, in cases of a jury trial, jeopardy attaches when a jury is empaneled and sworn, as that is the point when the defendant is " 'put to trial before the trier of the facts.' " *Id*. at 394 (quoting *United States v. Jorn*, 400 U.S. 470, 479 (1971)).

¶ 24　The Court has cautioned, however, that in assessing whether and when jeopardy attaches, " 'rigid, mechanical' rules" should not be applied. *Id*. at 390 (quoting *Illinois v. Sommerville*, 410 U.S. 458, 467 (1973)). Instead of relying upon the form of the action, inquiry should be made as to its substance to determine whether the person was " 'subjected to the hazards of trial and possible conviction.' " *Id*. at 391 (quoting *Green*, 355 U.S. at 187). The Court has made it clear that jeopardy does not attach "[w]ithout risk of a determination of guilt," and neither an appeal nor further prosecution constitutes double jeopardy under such circumstance. *Id*.

¶ 25　We relied on the Supreme Court's analysis of these principles of double jeopardy in *People v. Deems*, 81 Ill. 2d 384 (1980). In *Deems*, the defendant was indicted on the charge of receiving stolen property. On the date set for trial, the State conceded in open court that the defendant was not guilty of that offense and moved to dismiss the indictment. *Id*. at 386-87. The State further indicated that it planned to reindict the defendant for theft and that it would be ready to proceed to trial on the new charge within a week. *Id*. at 387. The defendant, however, demanded an immediate trial on the original charge. The circuit court likened the prosecutor's motion to a request for a continuance and held that the defendant was entitled to go to trial on the original charge. The State repeated its admission that the defendant did not commit the offense of receiving stolen property and observed that the court's refusal to dismiss the charge would force the State to prosecute someone who was innocent of that crime. *Id.*

¶ 26　The court, nevertheless, called the case for trial. The defendant waived trial by jury and neither party made an opening statement. The State called no witnesses. The defendant was then sworn but did not testify. The court found the defendant not guilty and entered a judgment of acquittal. Thereafter, the State indicted defendant for theft. The trial court dismissed that charge on double jeopardy grounds. *Id.* The appellate court reversed both the acquittal on the original charge and the dismissal of the theft charge. *People v. Deems*, 74 Ill. App. 3d 543 (1979).

¶ 27　On appeal, this court affirmed the judgment of the appellate court. The defendant contended that the court proceedings which occurred in conjunction with the original charge of receiving stolen property placed him in jeopardy and that his "acquittal" of that charge barred his prosecution for theft under the double jeopardy clauses of the federal and state constitutions (U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10). *Deems*, 81 Ill. 2d at 387. In rejecting the defendant's argument, we determined that under the facts presented

"defendant has not yet been subjected to jeopardy, much less double jeopardy." *Id.* at 387-88.

¶ 28    Taking instruction from the decisions of the Supreme Court, we held that the "rules that specify when jeopardy attaches and that prohibit a retrial of an acquitted defendant *** should not be applied mechanically when the interests they protect are not endangered and when their mechanical application would frustrate society's interest in enforcing its criminal laws." *Deems*, 81 Ill. 2d at 388.

¶ 29    Although the circuit court had entered an order which purported to "acquit" the defendant, we emphasized that "the word 'acquittal' 'has no talismanic quality for purposes of the Double Jeopardy Clause.' " *Id.* (quoting *Serfass*, 420 U.S. at 392). We further explained that "what constitutes an acquittal for purposes of the double jeopardy clause is not necessarily controlled by the form of the judge's action" or "what the judge calls it." *Id.* at 388-89 (citing *Martin Linen Supply*, 430 U.S. at 571, and *Jorn*, 400 U.S. at 478 n.7).

¶ 30    Applying these principles to the facts before us, we looked beyond the form to the substance of what occurred in the circuit court and held that "[w]hile the judge denominated his action an 'acquittal,' it bore none of those characteristics except the label." *Deems*, 81 Ill. 2d at 389. We explained that the State, rather than attempting to convict the defendant, wished to dismiss the charge against him on the ground that he was not guilty of the charged offense. *Id.* Based upon the facts presented, we determined that "[t]he 'trial' held at the first proceeding was a sham, an artifice employed by the trial judge to achieve the result of a dismissal with prejudice for want of prosecution." *Id.* Because the record was clear that "defendant was at no time during these proceedings in danger of being found guilty of any offense," we held that " '[w]ithout risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy.' " *Id.* at 390 (quoting *Serfass*, 420 U.S. at 391-92).

¶ 31    The State contends that *Deems* controls the instant appeal. We agree. Just as in *Deems*, it is clear that during the proceedings conducted in the circuit court, defendant was at no time in danger of being found guilty of any offense. Thus, as in *Deems*, "defendant has not yet been subjected to jeopardy, much less double jeopardy." *Id.* at 387-88.

¶ 32    Similar to the defendant in *Deems*, defendant here contends that the circuit court's direction of a verdict in his favor constituted an "acquittal" because he was placed in jeopardy once the jury was sworn and a "trial" was conducted, even though the State ceased to participate prior to the swearing of the jury.

¶ 33    However, just as in *Deems*, the record in this case belies defendant's contentions. Although the parties had engaged in jury selection, the State presented its written motion for continuance prior to the panel being sworn. The circuit court denied the continuance motion. At that point, the State clearly indicated that it would not participate any further in the proceedings. Despite the State's declaration, the court swore the jury.

¶ 34    When the court then invited the State to proceed, the prosecutor again clearly indicated that the State would not participate. In response, defendant waived opening argument. The State called no witnesses and presented no evidence. Defense counsel then asked the court to enter directed findings of not guilty as to both charges. The prosecutor did not respond and repeated that the State was not participating in the proceedings. The circuit court then

-10-

directed judgment in favor of defendant, with its written order stating that the "matter is dismissed."

¶ 35    We hold that, like the defendant in *Deems*, defendant in this case was never at risk of being found guilty of any offense. Similar to *Deems*, the State presented no evidence against defendant which could support a conviction. Instead, the State stood silently throughout the entire proceeding. Where a defendant faces no risk of a determination of guilt, jeopardy does not attach. *Deems*, 81 Ill. 2d at 390. Accordingly, an appeal from such a judgment does not constitute double jeopardy. *Id*.

¶ 36    The fact that the State participated in jury selection and that the jury ultimately was sworn does not alter our conclusion under these specific facts.

¶ 37    Defendant correctly asserts that, generally, jeopardy attaches in a jury trial when the jury is empaneled and sworn. *Serfass*, 420 U.S. at 388. The reason for holding that jeopardy attaches at this juncture "lies in the need to protect the interest of an accused in retaining a chosen jury." *Crist v. Bretz*, 437 U.S. 28, 35 (1978). That interest has been described as a defendant's "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter*, 336 U.S. 684, 689 (1949).

¶ 38    However, defendant's argument is precisely the type of mechanical application of the principles of double jeopardy that we rejected in *Deems*. Defendant would have us turn a blind eye to what actually transpired in the circuit court and hold that, because the jury was sworn, he necessarily was placed in jeopardy. In *Deems*, however, we focused on the core principle of the double jeopardy prohibition, which is that a defendant may not be twice placed at risk of a determination of guilt on the same charge. To that end, we held that jeopardy attaches in those circumstances where a person has been placed in danger of being found guilty of any offense. *Deems*, 81 Ill. 2d at 390.

¶ 39    It is true that in virtually all cases in which a trial by jury occurs, jeopardy will attach when the jury is sworn. However, under the unique set of facts presented here, there is no question that defendant was never at risk of conviction. The State indicated it would not participate prior to the jury being sworn. From that point forward, defendant was not at risk of conviction. It is for this same reason that defendant's interest in retaining a chosen jury is not implicated—there was no "trial" to be completed by that particular tribunal.

¶ 40    Because defendant was not placed in jeopardy, the circuit court's entry of directed verdicts of not guilty did not constitute true acquittals. In fact, we note that, in directing findings of not guilty in favor of defendant, the circuit court itself repeatedly referred to its action as a "dismissal" rather than an acquittal: it informed the jury that the "case is dismissed" against the defendant and stated in its written order that the "matter is dismissed." Under these facts, the interests protected by the double jeopardy clause "simply are not threatened in this case." See *Deems*, 81 Ill. 2d at 389.

¶ 41    Although we can understand the frustration of the circuit court regarding the delays in the case and its desire to control its docket, we cannot countenance proceedings which the court labels as a "trial" but which simply prove to be "a sham [or] artifice employed by the trial judge to achieve the result of a dismissal with prejudice for want of prosecution." *Id*. at

389.[7]

¶ 42    In sum, the order of the circuit court directing judgment in favor of defendant on all charges constituted an appealable dismissal order under Rule 604(a)(1). Accordingly, we affirm the judgment of the appellate court, vacate the judgment of the circuit court, and remand this cause to the circuit court for further proceedings.

¶ 43    We believe it prudent to provide specific guidance and instruction upon remand, given what has previously transpired in the circuit court. The circuit court is directed to consider the State's motion to continue trial under the framework set forth in section 114-4 (725 ILCS 5/114-4 (West 2010)). Accordingly, the State must present a written motion supported by affidavit (725 ILCS 5/114-4(a) (West 2010)) and the circuit court must conduct a hearing which subjects that motion to the standards set forth in section 114-4(e) (725 ILCS 5/114-4(e) (West 2010) (requirement of due diligence)) and section 114-4(h) (725 ILCS 5/114-4(h) (West 2010) (construing the statute "to the end that criminal cases are tried with due diligence consonant with the rights of the defendant and the State to a speedy, fair and impartial trial")).

¶ 44                                    CONCLUSION

¶ 45    For the foregoing reasons, the judgment of the appellate court is affirmed. The judgment of the circuit court is vacated, and this cause is remanded to that court for further proceedings consistent with this opinion.

¶ 46    Appellate court judgment affirmed.

¶ 47    Circuit court judgment vacated.

¶ 48    Cause remanded.

¶ 49    JUSTICE BURKE, dissenting:

¶ 50    On the date of defendant's scheduled jury trial, the prosecutor informed the trial court that the State was not ready to proceed with its case because two of its witnesses were not present. The prosecutor asked the court for a "continuance even for just a few moments, or if we could have just a little bit longer to see if our witnesses will be arriving." The court indicated that it would proceed with jury selection, followed by a 10-minute recess, after which the State could either dismiss its case or allow the jury to be sworn. The prosecutor agreed to this course of action over a defense objection.

---

[7]We note that in its opinion below, the appellate court made citation to a troubling number of cases in which our circuit courts have employed improper procedures similar to those we condemned in *Deems*. See 2011 IL App (2d) 100498, ¶¶ 24-29 (citing *People v. Edwards*, 97 Ill. App. 3d 407 (1981) (applying *Deems*, held that jeopardy did not attach where the State did not participate in the case and the court purported to "acquit" the defendant), *People v. Verstat*, 112 Ill. App. 3d 90 (1983) (same), and *People v. Harris*, 222 Ill. App. 3d 1089 (1991) (same)). It is our expectation that after today's opinion, we will not see this practice again.

¶ 51       A jury was selected with full participation by both parties. The State then filed a written motion for a continuance which was denied. Prior to the jury being sworn, the prosecutor informed the court that the State would not be participating in the trial. Subsequently, the jury was sworn and given preliminary instructions. The State waived opening statement and declined to present any evidence. The defense moved for directed verdicts on both of the charged counts. The court granted defendant's motion and entered directed verdicts of not guilty.

¶ 52       Thereafter, the State filed a certificate of impairment as well as a notice of appeal under Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2006). The appellate court held that the circuit court abused its discretion in denying the State's motion for a continuance. 2011 IL App (2d) 100498. The court rejected defendant's argument that it lacked jurisdiction to hear the State's appeal, determining that the circuit court's grant of directed verdicts of not guilty constituted an appealable dismissal of the charges rather than a nonappealable acquittal. 2011 IL App (2d) 100498, ¶ 46. Only the jurisdictional issue is before this court.

¶ 53       The majority now affirms the appellate court and holds, based on our decision in *People v. Deems*, 81 Ill. 2d 384 (1980), that "the circuit court's entry of directed verdicts of not guilty did not constitute true acquittals." *Supra* ¶ 40. The majority reasons that defendant "was never at risk of conviction" because the State indicated it would not participate prior to the jury being sworn and presented no evidence against defendant which would support a conviction. *Supra* ¶¶ 35, 39. Accordingly, the majority determines that, as in *Deems*, defendant's trial was a " 'sham [or] artifice employed by the trial judge to achieve the result of a dismissal with prejudice for want of prosecution.' " *Supra* ¶ 41 (citing *Deems*, 81 Ill. 2d at 389).

¶ 54       I disagree with the majority. I would find that there are important distinctions between the facts in this case and those in *Deems*, which should dictate a different result.

¶ 55       In *Deems*, the State conceded on the date set for trial that the defendant was not guilty of the charged offense of receiving stolen property and sought to dismiss the indictment. *Deems*, 81 Ill. 2d at 386-87. The circuit court refused to dismiss the charge and called the case for trial. Neither party made opening statements or presented evidence. The defendant was sworn but did not testify. *Id.* at 387. The court found the defendant not guilty and entered a judgment of acquittal. When the State attempted to reindict the defendant on a charge of theft, the trial court dismissed that charge on double jeopardy grounds. The appellate court reversed (*People v. Deems*, 74 Ill. App. 3d 543 (1979)), and this court affirmed the appellate court (*Deems*, 81 Ill. 2d at 391).

¶ 56       The defendant argued that the original trial proceedings placed him in jeopardy and that, under the constitutional prohibition against double jeopardy, the judgment entered by the trial judge barred his subsequent prosecution for theft. *Id.* We held that, although the trial judge had "denominated his action an 'acquittal,' it bore none of those characteristics except the label" and that "the 'trial' held at the first proceeding was a sham, an artifice employed by the trial judge to achieve the result of a dismissal with prejudice for want of prosecution which *** he did not have the authority to order." *Id.* at 389. This conclusion was premised on the fact that the trial proceedings "were not an attempt by the State to convict defendant."

-13-

*Id.* Recognizing that, although jeopardy generally attaches in a bench trial when the first witness is sworn and the court begins to hear evidence, we noted that rule is premised on the fact that the first witness usually is "a prosecution witness whose appearance is part of the incriminating presentation jeopardizing defendant." *Id.* at 390. Considering that no evidence was introduced, we determined that jeopardy did not attach because the defendant was not in danger of being convicted of any offense. *Id.* We concluded that, since jeopardy had not attached, the State was entitled to challenge the circuit court's judgment, and such appeal did not violate the bar against double jeopardy. *Id.*

¶ 57    The case at bar is clearly distinct from *Deems*. *Deems* involved a bench trial at which the defendant was sworn but did not testify. *Id*. at 387. In a bench trial, the traditional rule is that jeopardy attaches when the first witness is sworn and the court begins to hear evidence. *Id.* at 389. Because defendant never testified and no evidence was introduced, jeopardy never attached. *Id.* at 389-90. The majority holds that in this case, as in *Deems*, 81 Ill. 2d at 387-88, " 'defendant has not yet been subjected to jeopardy, much less double jeopardy,' " (*supra* ¶ 31), and that jeopardy never attached because defendant faced no risk of a determination of guilt (*supra* ¶ 35). I disagree. Implicit in the majority's holding is the notion that impaneling and swearing the jury had no legal significance, which is contrary to well-established principles regarding double jeopardy.

¶ 58    The right to be free from double jeopardy is encompassed in the fifth amendment to the United States Constitution, which states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., amend. V. The Illinois Constitution also protects an accused from twice being placed in jeopardy for the same offense. Ill. Const. 1970, art. I, § 10. The statutory implementation of this constitutional right is set forth in section 3-4(a)(1) of the Criminal Code of 1961 (720 ILCS 5/3-4(a)(1) (West 2006)), which provides:

>    "(a) A prosecution is barred if the defendant was formerly prosecuted for the same offense, based upon the same facts, if that former prosecution:
>
>    (1) Resulted in either a conviction or an acquittal or in a determination that the evidence was insufficient to warrant a conviction[.]"

These provisions encompass the fundamental principle that:

>    "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187-88 (1957).

See also *Crist v. Bretz*, 437 U.S. 28, 35 (1978); *People v. Milka*, 211 Ill. 2d 150, 169-70 (2004).

¶ 59    In a jury trial, jeopardy attaches when the jury is impaneled and sworn. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569 (1977); *Serfass v. United States*, 420 U.S. 377, 388 (1975); *People v. Henry*, 204 Ill. 2d 267, 283 (2003); see also *Downum v. United States*, 372 U.S. 734 (1963). After that point, the defendant has a constitutional right to have his case

decided by that particular jury. See *Crist*, 437 U.S. at 36. This rule is not "simply an arbitrary exercise of linedrawing." *Id.* at 37. To the contrary, it serves to safeguard a defendant's interest in retaining a chosen jury, which is a " 'valued right' " that is protected by the constitutional guarantee against double jeopardy. *Id.* at 38 (Blackmun, J., concurring) (quoting *Wade v. Hunter*, 336 U.S. 684, 689 (1949)).

¶ 60    I would find that defendant had a valued right to have his guilt or innocence decided by the jury that had been selected by the parties and sworn by the trial court. Granting the State's subsequent motion for a continuance, over defendant's objection, would have permitted the prosecution to defeat defendant's constitutionally protected right to have his case heard by the chosen jury. See, *e.g.*, *Downum*, 372 U.S. at 737 (double jeopardy clause prevented a second prosecution of a defendant whose first trial ended just after the jury had been sworn and before any testimony had been taken). In light of these circumstances, the majority's holding that jeopardy did not attach to these proceedings because the State declined to participate in the trial after jury selection overlooks the purpose underlying the attachment-of-jeopardy rules.

¶ 61    The majority finds that jeopardy never attached, despite the jury having been impaneled and sworn, because the trial proceedings in this case constituted a " 'sham' " or " 'artifice.' " *Supra* ¶ 41 (quoting *Deems*, 81 Ill. 2d at 389). This is patently incorrect. Whereas in *Deems*, the State sought to dismiss the case at the outset of the proceedings, the proceedings below advanced well beyond the dismissal stage.

¶ 62    In the case at bar, when the case was called for trial, the prosecutor asked for a short recess, stating that she desired "a continuance even just for a few moments, or *** just a little bit longer to see if [the State's] witnesses will be arriving" and that she was "hopeful that they will be here today." These statements clearly indicate that the prosecutor only sought a temporary adjournment of the proceedings, based on her desire to wait for the State's witnesses to appear, and that she intended to proceed on the charges against defendant. No written motion to continue was filed at that time. When the trial court offered to postpone swearing the individual panels until the entire jury had been chosen, the prosecutor agreed, saying, "[y]es, your Honor. If we could not swear them, and before swearing them in if I could have a momentary recess." The trial judge then stated, "I'll give you ten minutes, bring [the jurors] out and swear them in or move to dismiss your case if you wish." In response to this suggestion, the prosecutor again expressed agreement by saying, "Thank you, your Honor." The prosecutor did not object to the court's suggested procedure, nor did she object to starting the trial or choosing the jury. In contrast to *Deems*, here the prosecutor affirmatively rejected the court's suggestion to move to dismiss the case, a motion which the court indicated would have been granted.

¶ 63    The majority's assertion that defendant "was at no time in danger of being found guilty of any offense" (*supra* ¶ 31) is belied by the actions of the court and the prosecutor. By agreeing with the trial court's suggested procedure and choosing the jury, the prosecutor participated in the trial and engaged in conduct designed to lead to a conviction. It is undisputed that the prosecutor fully participated in the selection of the jury. The trial commenced when both parties began selecting the jury. See *People v. Williams*, 59 Ill. 2d 402, 405 (1974) (holding that, in deciding whether the speedy-trial statute has been satisfied,

-15-

trial commences when the process of selecting the jury begins); *People v. Castro*, 114 Ill. App. 3d 984, 989 (1983) (same, for purposes of holding a trial *in absentia*). It is a safe assumption that the prosecutor would not have agreed to and participated in the selection of a jury if she had no intent to go to trial. Indeed, if the prosecutor had not planned to proceed with the trial, then choosing a jury would have been a waste of time, as well as a waste of judicial and prosecutorial resources. The jury-selection process itself further demonstrates that the parties did not engage in a "sham" proceeding. Though the *voir dire* was not transcribed, the record reflects that the trial judge and defense counsel each excused two potential jurors from the venire.

¶ 64 In addition, the majority's holding allows the State to unilaterally render a trial a "sham" simply by refusing to call witnesses after a jury has been selected. In my view, such a practice improperly erodes the trial court's ability to control its own docket. See *J.S.A. v. M.H.*, 224 Ill. 2d 182, 195-96 (2007) (holding that a trial court generally "possesses the inherent authority to control its own docket and the course of litigation, including the authority to prevent undue delays in the disposition of cases caused by abuses of the litigation process").

¶ 65 *Deems* is inapplicable to this case because jeopardy attached to these proceedings and the parties did not engage in a "sham" trial. Because the jury was impaneled and sworn, and jeopardy attached, the State may not reprosecute defendant for the same offenses. Accordingly, the State was not permitted to appeal the trial court's judgment under Supreme Court Rule 604(a)(1) (Ill. S. Ct. R. 604(a)(1) (eff. July 1, 2006)), and the appellate court had no jurisdiction over such appeal. See *People v. Young*, 82 Ill. 2d 234, 239 (1980) (Rule 604(a)(1) is subject to the limitations of the double jeopardy clauses). For the foregoing reasons, I respectfully dissent.