Per Curiam:
*453 Rictor Bowman seeks habeas relief, challenging whether the State can pursue a second trial against him on criminal charges. His first trial ended after the district judge declared a mistrial because the alleged victim, a young child, did not respond when asked to take the oath required of all witnesses. Bowman now argues a second trial would violate the double jeopardy protections of the United States Constitution, the Kansas Constitution Bill of Rights, and Kansas statutes.
We resolve this case by applying the plain language of K.S.A. 22-3423 and K.S.A. 2018 Supp. 21-5110. K.S.A. 22-3423 identifies situations in which a district judge has the discretion to grant a mistrial. K.S.A. 2018 Supp. 21-5110 allows a second trial of a criminal defendant only in certain circumstances. We conclude that the declaration of mistrial in this case was error and that none of the circumstances allowing a second trial under K.S.A. 2018 Supp. 21-5110 applies. Bowman is therefore entitled to the habeas relief he seeks, and this court hereby orders dismissal of this case and Bowman's release from any confinement arising out of it.
FACTS AND PROCEDURAL HISTORY
The State charged Bowman with rape in violation of K.S.A. 2016 Supp. 21-5503(a)(3) ; aggravated criminal sodomy in violation of K.S.A. 2016 Supp. 21-5504(b)(1) ; and four counts of intimidation of a witness or victim under K.S.A. 2016 Supp. 21-5909(a)(2)(B). The charges stemmed from Bowman's alleged sexual abuse of his three-year-old granddaughter.
The State filed charges after the Salina Police Department investigated a report made by the alleged victim's mother. The mother related that she had been shopping with her daughter when, in the middle of a store, her daughter blurted out that Bowman had put his hands down the child's pants. Reportedly, without prompting, the child then showed how Bowman had touched her.
As part of the investigation, a detective conducted and recorded an interview of the child. The child relayed information about sexual contact between her and Bowman, including more contact than the reported touching. Her statements and the remainder of the investigation led to Bowman being charged with rape and aggravated criminal sodomy. At the preliminary hearing on the charges, the district judge watched a video recording of the child's forensic interview at the Child Advocacy Center. The judge found probable cause to believe the felonies had been committed and that Bowman had committed them.
Before trial, the State moved to present the child's testimony through closed circuit television broadcast under K.S.A. 22-3434 (video testimony of child victim admissible in specified cases) and asked that a comfort person be allowed to sit with the child while she testified. See State v. Rochelle , 297 Kan. 32, 33, 298 P.3d 293 (2013) (district judge has discretion to determine whether a comfort person may accompany a child witness). The judge granted both requests.
Fourteen days before Bowman's trial began, the judge held a competency hearing to determine if the child could testify at trial.
*454 By then the child was four years old. See State v. Radke , 168 Kan. 334, 340-41, 212 P.2d 296 (1949) (district judge may determine witness' capacity, meaning witness has capacity to understand oath and can "receiv[e] just impressions of the facts respecting which he is examined"; incompetent witness cannot testify). At the competency hearing, the child took the witness stand and responded appropriately to the oath, as modified for a child witness. Although the child initially showed hesitance that the district judge later labeled as "shyness," she answered questions that probed her ability to distinguish a true statement from a lie. She was not asked questions about the facts underlying the criminal charges. At the end of the hearing, the district judge found the child competent to testify.
When the trial began, the prosecutor's opening statement laid out the State's anticipated evidence against Bowman, including the substance of the child's pretrial statements to the detective in her forensic interview. This anticipated evidence included descriptions of specific sex acts.
The State then began its case by introducing evidence of how the child's allegations against Bowman came to light. This included an audiotape of a call to police and descriptions of out-of-court statements made by the child to her mother and grandmother. Bowman objected to this evidence, arguing that the district judge should not allow witnesses to testify about the child's statements until after the child had testified, that the statements were inadmissible hearsay, and that admitting the evidence would violate Bowman's constitutional right to confront witnesses against him. The judge overruled Bowman's objections under K.S.A. 60-460(a) (hearsay exception for "[a] statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness").
The State then called the child as a witness. The judge, jury, and the defendant watched by closed-circuit television in one courtroom while, in another courtroom, the State called the child to the stand and the court reporter tried to administer the oath required of all witnesses. See K.S.A. 22-3434 (establishing closed circuit procedure for certain child witnesses); K.S.A. 60-418 ("Every witness before testifying shall be required to express his or her purpose to testify by the oath or affirmation required by law."). Although the court reporter repeatedly asked the child to raise her hand, the child did not react. The court reporter then simply asked, "Do you promise to tell the truth today when you answer questions?" The child did not respond to the initial question or when the reporter repeated the question four times. At that point, Bowman's counsel asked for a bench conference.
The court reporter and counsel returned to the other courtroom where the jury and Bowman were and, at the bench, Bowman's counsel argued the witness was "being forced basically to say something that apparently she doesn't care to say. ... She is not a competent witness to testify." The judge responded, "What the Court has seen is 30 seconds, maybe at most a minute, of counsel getting her up there to try and get her to take the oath. It is apparent to the Court that she is shy." Bowman's counsel expanded on his argument that the witness was being coerced and was not a competent witness, and the State responded. The judge found that the child was "shy in a very intimidating environment" and said he had not "heard anything that would give the Court [reason] to believe she is being coerced." The judge stated he would allow the State some leeway in trying to get the child to respond to the administration of the oath.
The attorneys and the court reporter returned to the courtroom where the child witness waited with her comfort person. Again, the reporter twice asked the child to raise her hand, but the child did not respond. The reporter then twice asked the child whether she promised to tell the truth. Again, the child did not respond.
Bowman again objected. Back in the courtroom where Bowman was present but the jury had been excused, the judge remarked that "the witness is not giving the Court any indication that she is going to take the oath."
*455 The judge then observed that the witness had to take the oath before she could testify and that the parties had "a hearsay issue with anything admitted prior." The judge asked the State how it wanted to proceed, and the State responded that it could not continue with the trial. Bowman's counsel then argued, "[I]f the State cannot produce the evidence consistent with hearsay and confrontation rules jeopardy has already attached and this case should be dismissed with prejudice." The State countered with a request for mistrial rather than dismissal with prejudice.
After additional argument, the judge ruled, "The child did not take the oath, therefore she is not competent to testify and she cannot provide testimony." The judge found the State would not be able to prove certain of the sex offense counts without the child's testimony, but the child's testimony was unnecessary to the State's prosecution of intimidation counts. Still, the judge said, the jury had heard "inadmissible hearsay evidence regarding that child that would bleed over" to the intimidation counts. The judge therefore granted a mistrial on the entire case. The judge took under advisement whether any or all counts should be dismissed with prejudice and asked counsel to brief the issue. The judge then discharged the jury.
Within a few weeks, the district judge heard additional arguments on Bowman's motion to dismiss with prejudice on double jeopardy grounds. Defense counsel began his remarks, arguing that manifest necessity evaluated under strictest scrutiny was needed to justify a mistrial due to a failure of prosecution evidence. Had Bowman's trial continued, counsel asserted, either with an incompetent witness or without the child's testimony, Bowman would have been acquitted on the sex crime charges.
The judge raised the possibility of proceeding in another trial under K.S.A. 60-460(dd) if the child remained unavailable. See K.S.A. 60-460(dd) (allowing admission of child's pretrial statement in some cases, including if "the trial judge finds, after a hearing on the matter, that the child is disqualified or unavailable as a witness, the statement is apparently reliable and the child was not induced to make the statement falsely by use of threats or promises"). Bowman's counsel objected that admission of the child's out-of-court statements would nevertheless violate Bowman's constitutional right to confront the witness, and the judge observed that certain of the child's out-of-court statements might not qualify as testimonial and thus would be admissible. Bowman's counsel also argued that the State could have chosen to attempt admission of the child's pretrial statements under K.S.A. 60-460(dd) in the first trial, which would mean "there wouldn't have been manifest necessity for calling the closure to the proceedings." Counsel observed that the State had said it was in a "no-win" situation when the child refused to take the oath, but the "Constitution and this Court [are] not in the business of guaranteeing the State a win."
As the hearing continued, the judge said that Bowman's jury had been polluted by the prosecutor's opening statement as well as the hearsay evidence admitted, but defense counsel pointed out that the jury would have been told statements of counsel were not evidence and must be disregarded. When Bowman's counsel mentioned that the judge had granted the mistrial on the ground that the child witness was not competent to testify, the judge said that perhaps "unavailable" was a more accurate description of the child. The judge asked, apparently rhetorically, "Are we just using two different words to describe the same thing, a four year old who wouldn't take the oath, isn't that essentially what happened?"
This prompted defense counsel to argue that the "fragility" of the child witness had been foreseeable, given her initial reticence about testifying during the pretrial competency hearing. He closed his argument by again saying that the prosecution's reference to the trial as a "no win" demonstrated "a concession that they knew this would head to acquittal if the trial continued and acquittal would be an absolute bar to [a second trial]."
For her part, the prosecutor agreed that the strictest scrutiny should be applied to determine whether manifest necessity for the mistrial existed and a second trial was permitted. She characterized caselaw on mistrial *456 and double jeopardy as "nuanced," allowing a second trial when there was a failure of critical State evidence unless there was misconduct or negligence on the part of prosecutors "in failing to recognize the risk of witness unavailability." She said that the district judge had had no alternative other than to declare mistrial in Bowman's case and said the child witness was unavailable because she froze on the witness stand, not that she was incompetent to testify. She described the jury as irreparably tainted, including on the intimidation counts, and said the trial could not have been fair to Bowman because of the content of her opening statement. In her view, the strictest scrutiny test for manifest necessity was met by the circumstances in Bowman's case.
Defense counsel's brief response to the prosecutor's argument was limited to emphasizing that the reason the child did not take the oath and testify was legally irrelevant and not in evidence. He also said again that the defense had not sought a mistrial and would have been content to move forward with an admonition to the jury to disregard the admitted hearsay evidence and the prosecutor's opening statement regarding the child's out-of-court statements.
The district judge began his ruling by reviewing the proceedings to date. In doing so, he described the child's behavior at the competency hearing after her initial hesitation:
"She was energetic, almost bubbly as far as just bounding in the chair, swiveling, I believe playing with the microphone, et cetera. She was very active. She was shy in that she was hesitant in the beginning and then ultimately opened up and answered questions regarding the difference between truth and a lie and the consequences thereof."
The judge distinguished the child's "normal four-year-old behavior" at the competency hearing from her demeanor at trial:
"Her head was down, she was not moving, [and] she was not bouncing back and forth. ... She didn't play with the microphone. She didn't crawl. She simply, as I recall, chin was down into her chest and she was looking down and unresponsive. She was frozen. I do not know why."
The judge then noted the State's pretrial motions practice and opening statement made it clear the State intended to rely on the child appearing and testifying at trial. The judge next explained that he had failed to turn off the microphone that transmitted sound between the two courtrooms where Bowman and the jury sat during the bench conference when the lawyers and he discussed the child's first refusal to take the oath. This failure, he said, meant the child might have overheard the discussion, including defense counsel's argument that the court should not allow her testimony. At one point during this discussion, the child had left the witness stand.
Finally, the judge commented on the child's conduct after he allowed the court reporter to try to administer the child witness' oath again:
"She was again chin down, looking downward focused, not responsive, not making any movement. She appeared frozen, not just shy. Much more so than at the prior hearing. To the extent that it readily became apparent that this child was not going to testify and that that was not a situation similar to the competency hearing [14] days prior where she had eventually opened up and was willing to discuss both with [the prosecutor] and with [Bowman's counsel] during cross-examination."
The judge said he had granted the mistrial over the defense's objection "based upon ... what I saw as a witness who was not available or competent. I don't recall what word I used. But it was because she refused to take the child-friendly oath and refused to respond and I didn't see that changing in the foreseeable future."
The judge then said that most of the testimony heard by the jury before the child was called as a witness was "inadmissible evidence without her testimony being present." The judge rejected the possibility of admitting some of the child's statements under K.S.A. 60-460(dd), when the process of sorting admissible from inadmissible material would have needed to take place midtrial. The judge also said that a curative admonition *457 to the jury to disregard the prosecutor's opening statement would have been ineffective. The child's forensic interview detailed in the prosecutor's opening statement "was highly prejudicial in that circumstance as it related to oral sex, details of penetration of a three-year-old child."
The judge ultimately concluded that the mistrial was appropriately granted under two subsections of the mistrial statute-because it was "physically impossible to proceed with the trial in conformity with law" and because "[p]rejudicial conduct, in ... the courtroom, [made] it impossible to proceed with the trial without injustice to either the defendant or the prosecution." See K.S.A. 22-3423(1)(a), (c). The "[p]rejudicial conduct in the courtroom" that the judge referred to was his failure to turn off the microphone, which may have permitted the child to overhear his bench conference with counsel; he did not cite the admission of inadmissible hearsay as "prejudicial conduct."
The judge then turned to the constitutional question of whether the standard of manifest necessity to permit a second trial had been met. The judge commented on his struggle with whether the mistrial was of an "essentially ... unforeseen nature" given the "inherent risk in a four year old testifying even if this Court finds her competent ten minutes before she gets up on the stand and testifies because it is a four year old." The judge concluded he could "fairly say the State relied upon [the judge's pretrial competency ruling] in crafting its case," and he distinguished the circumstances before him from those in cases in which an adult witness refused to testify: "This is a four-year-old child who froze." The judge concluded, "I considered alternatives ... and I still see no way other than to discharge that jury." He reiterated that the statutory mistrial provisions of K.S.A. 22-3423(1)(a) and (1)(c) applied and held that manifest necessity under the strictest scrutiny supported granting the mistrial and allowing the case against Bowman to be tried a second time.
ANALYSIS
As we turn to our analysis of Bowman's request for a determination that the State not be allowed to twice place him in jeopardy on the criminal charges, we first consider whether we have jurisdiction. Bowman pursues relief under Kansas' habeas corpus statute, K.S.A. 2018 Supp. 60-1501. That statute allows an individual "who is detained, confined or restrained of liberty on any pretense whatsoever, ... physically present in this state [to] prosecute a writ of habeas corpus in the supreme court, court of appeals or the district court of the county in which such restraint is taking place." K.S.A. 2018 Supp. 60-1501(a).
We have recognized that a writ of habeas corpus is "a proper remedy for challenging a trial court's pretrial denial of a claim of double jeopardy [because a] defendant would otherwise have no appellate forum in this state in which to assert a valid double jeopardy claim before being subjected to such jeopardy." In re Habeas Corpus Petition of Mason , 245 Kan. 111, 112-13, 775 P.2d 179 (1989). We therefore conclude we have jurisdiction over this proceeding under K.S.A. 2018 Supp. 60-1501.
Bowman has the burden of establishing his right to relief under this statute. See Sammons v. Simmons , 267 Kan. 155, 158, 976 P.2d 505 (1999).
Bowman relies on three sources of law to support his contention that a second trial would violate double jeopardy protections: the United States Constitution, the Kansas Constitution Bill of Rights, and Kansas statutes. But we need not decide today whether a second trial would violate the federal or state constitutions if we can resolve Bowman's case based on statutory interpretation. See State v. Wetrich , 307 Kan. 552, 558-59, 412 P.3d 984 (2018). "Appellate courts generally avoid making unnecessary constitutional decisions." Wilson v. Sebelius , 276 Kan. 87, 91, 72 P.3d 553 (2003) ; see State ex rel. Schmidt v. City of Wichita , 303 Kan. 650, 658, 367 P.3d 282 (2016) ("Here, by first deciding the issue of compliance with statutory procedures, we eliminate the need to determine whether the proposed ordinance is constitutional.").
Bowman cited both the Kansas mistrial statute and the Kansas double jeopardy statute *458 in his brief to this court. The State's brief relied exclusively on the mistrial statute to justify a second trial for Bowman, adhering to caselaw suggesting that the statutory bases for mistrial also serve as exceptions to a double jeopardy bar of a second prosecution. See State v. Johnson , 261 Kan. 496, 499, 932 P.2d 380 (1997) (mistrial, double jeopardy statutes provide complementary bases for second trial).
Like the constitutional arguments advanced by the parties, the question of the soundness of any such precedent need not be reached today if our interpretation of the plain language of the mistrial statute leads us to conclude that the district judge erred in declaring the mistrial. Even under the State's view of the governing law, an improperly declared mistrial does not permit a second trial that would conflict with the plain language of the double jeopardy statute.
Mistrial Statute
We begin our statutory interpretation with its most fundamental rule: Legislative intent governs. And the best avenue for discerning that intent is to read the language of the statute, giving common words their ordinary meaning. If the statute contains plain and unambiguous language, we do not look to extrinsic aids for guidance on legislative intent because the statutory language is " 'the best and only safe rule for determining the intent of the creators of written law' .... [Citation omitted.]" State v. Spencer Gifts , 304 Kan. 755, 761, 374 P.3d 680 (2016). If, however, the statute's text is unclear or ambiguous, we turn to tools of statutory construction such as canons of construction and legislative history to determine the Legislature's intent. Ambrosier v. Brownback , 304 Kan. 907, 911, 375 P.3d 1007 (2016).
We review a district judge's decision to grant a mistrial for abuse of discretion. State v. Barlett , 308 Kan. 78, 88, 418 P.3d 1253 (2018). Judicial discretion may be abused in three ways: by exercising discretion based on an error of law, an error of fact, or in an otherwise arbitrary, fanciful, or unreasonable manner. State v. Gonzalez-Sandoval , 309 Kan. 113, 126-27, 431 P.3d 850 (2018).
Kansas' mistrial statute reads:
"(1) The trial court may terminate the trial and order a mistrial at any time that [it] finds termination is necessary because:
(a) It is physically impossible to proceed with the trial in conformity with law; or
(b) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law and the defendant requests or consents to the declaration of a mistrial; or
(c) Prejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution.
....
"(2) When a mistrial is ordered, the court shall direct that the case be retained on the docket for trial or such other proceedings as may be proper and that the defendant be held in custody pending such further proceedings, unless he is released pursuant to the terms of an appearance bond." K.S.A. 22-3423.
Again, the district judge relied on subsections (1)(a) and (1)(c) in granting the State's motion for mistrial in this case.
As to subsection (1)(a), the State agreed with defense counsel at oral argument before this court that the child's refusal to take the oath and testify did not make it "physically impossible" to continue Bowman's trial. This was a sensible, and wise, concession. Giving the common words in the phrase "physically impossible" their ordinary meaning, failure of even a critical portion of the State's proof because of a recalcitrant witness of any age and for any reason does not make trial a physical impossibility. See Webster's New World College Dictionary 1101 (5th ed. 2014) ("physical" defined as "1 of nature and all matter; natural; material ... 5 a) of the body as opposed to the mind"); Webster's New World College Dictionary 731 (5th ed. 2014) ("impossible" defined as "not capable of being, being done, or happening"). The child's refusal to take the oath certainly made it more difficult for the State to obtain a conviction on the rape and sodomy counts *459 in the same way it is harder for any lawyer to obtain a desired result when evidence heralded in earlier testimony or the lawyer's own opening statement fails to materialize.
In addition, the circumstances of Bowman's case also did not meet the subsection (1)(a) requirement that any continuation of the trial would not be in conformity with the law. Although the judge was correct that the child's inability to testify meant that at least some of the testimony he had admitted earlier over defense counsel's objection could not be considered by the jury on any count, jurors could have been instructed to disregard it. See State v. Logsdon , 304 Kan. 3, 39, 371 P.3d 836 (2016) (any prejudice from hearsay statements admitted before declarant refused to testify removed by curative instruction to jury to disregard hearsay testimony). And jurors, as defense counsel observed, are routinely instructed that the statements of counsel, such as those in the prosecutor's opening, are not evidence in and of themselves. See PIK Crim. 4th 50.070 (statements, arguments, remarks of counsel not evidence). This means that it was within the judge's power to neutralize the ill effects to either party from the collapse of the prosecutor's trial strategy; it is commonplace for us, as appellate judges, to assume jurors follow such instructions, including those designed to cure problems that arise during trial. Logsdon , 304 Kan. at 39, 371 P.3d 836 (jury presumed to follow court's curative instruction); State v. Williams , 299 Kan. 509, 548, 324 P.3d 1078 (2014).
We conclude that the plain language of subsection (1)(a) of the mistrial statute could not support the mistrial declared in this case. The district judge abused his discretion in ruling otherwise because he based that ruling on an erroneous interpretation of the law.
On subsection (1)(c), we again start with plain language. That language permitted a mistrial only in the event that "[p]rejudicial conduct, in or outside the courtroom, [made] it impossible to proceed with the trial without injustice to either the defendant or the prosecution." In the State's brief and later, at oral argument, the prosecutor agreed with our reading of the record: The district judge regarded his neglect to turn off the microphone enabling audio transmission from courtroom to courtroom as the "[p]rejudicial conduct in ... the courtroom" that justified the mistrial declaration under subsection (1)(c).
The first problem with this argument is that the district judge's expressed concern, on the record before us, qualifies as mere conjecture. No sworn testimony or other evidence exists to demonstrate that the child heard or understood any of what was said during the bench conference or that whatever she heard or understood caused her to leave the witness stand or rebuff the court reporter's second series of efforts to administer the oath.
The second problem is that, even if we assume that the child accidentally overheard the bench conference and did understand counsel's arguments to be prompted by her behavior and, as a result, refused again to take the oath, the State faces the same difficulty in relying on subsection (1)(c) that it faced in relying on subsection (1)(a). It simply was not "impossible," as that common word is ordinarily understood, to proceed with the trial "without injustice to either the defendant or the prosecution."
Continuing the trial would not have led to injustice to Bowman. We must remember that Bowman opposed the mistrial; he wanted to continue and take his chances on the proof the State was ultimately able to muster. Rather than starting over with a new jury, Bowman wanted the judge to attempt to cure any prejudice arising from the earlier admission of hearsay testimony and the prosecutor's opening statement. Had the judge made reasonable efforts along those lines, and Bowman been convicted, the defense could not have complained successfully on appeal that the hearsay or opening statement were so harmful that Bowman deserved a reversal. Bowman and his counsel would have invited any error in failing to grant a mistrial. They would be stuck with the consequences of the risk they embraced.
Likewise, the State embraced risk in this case when the prosecutor chose to build her sex crime case around live trial testimony from a very young witness who might or *460 might not be able to follow through on her pretrial promise. The consequences were harsh but not unforeseeable. Regardless of whether the child witness in this case was found to be competent to testify approximately two weeks before the trial, as the district judge acknowledged, a four year old is unpredictable. Common sense dictated that the prosecutor exercise caution.
Indeed, precedent from this court has warned about exactly what ultimately happened in Bowman's trial-a hearsay declarant's failure to back up earlier witnesses who have already discussed the declarant's out-of-court statements. This is why we have suggested that the better practice is for counsel to order witness testimony so that the hearsay declarant takes the stand first. See State v. Davis , 236 Kan. 538, 541, 694 P.2d 418 (1985) ("While it may be better practice ... to call the declarants prior to the admission of their out-of-court statements by other witnesses, the failure to do so when the declarants are available and actually testify does not violate the confrontation clause."). For whatever reason, despite a contrary example in a child sex crime prosecution with a child victim from her own county, see State v. Miller , 293 Kan. 535, 540, 264 P.3d 461 (2011), the prosecutor in this case decided to do the opposite. Accepting that she did so in "utmost good faith," as she asserted at oral argument, we still cannot excuse her from the consequences of the risk she took or from the district judge's doubling down on that risk when he overruled defense objections to the hearsay testimony. The prosecutor's choice and the district judge's ruling on the defense objections were at the root of the predicament in which all parties found themselves when the child would not take the oath. "Injustice" to the prosecution does not arise when a result follows from the risky but voluntary trial strategy choices of its counsel.
The plain language of subsection (1)(c) of the mistrial statute could not support the mistrial declared in this case. Again, the district judge abused his discretion in ruling otherwise because he based that ruling on an erroneous interpretation of the law.
Double Jeopardy Statute
In its brief, as stated above, the State argued only the applicability of the mistrial statute, without addressing the applicability of the double jeopardy statute. The district judge also relied only upon the mistrial statute. At oral argument, the prosecutor realized, as this court has, that we must also contend with the effects of the double jeopardy statute cited in Bowman's brief.
That statute, K.S.A. 2018 Supp. 21-5110, prohibits a second trial if a defendant has been "formerly prosecuted for the same crime, based upon the same facts," and a specific set of circumstances enumerated in the statute exists. Bowman argues that the set of circumstances set out in subsection (a)(3) of the statute fits his case. It applies if the former prosecution
"(3) was terminated without the consent of the defendant after the defendant had been placed in jeopardy, except where such termination shall have occurred by reason of:
(A) The illness or death of an indispensable party;
(B) the inability of the jury to agree; or
(C) the impossibility of the jury arriving at a verdict." K.S.A. 2018 Supp. 21-5110(a).
The State acknowledges, as it must, that Bowman opposed the mistrial and immediately and continuously sought a dismissal with prejudice. It is equally clear that jeopardy attached in the first proceeding under K.S.A. 2018 Supp. 21-5110(f), which reads: "A defendant is in jeopardy when such defendant is put on trial in a court of competent jurisdiction upon an indictment, information or complaint sufficient in form and substance to sustain a conviction, and in the case of trial by jury, when the jury has been impaneled and sworn." See Mason , 245 Kan. at 114, 775 P.2d 179 ; see also Martinez v. Illinois , 572 U.S. 833, 839-40, 134 S. Ct. 2070, 188 L.Ed.2d 1112 (2014).
The State's only argument under the double jeopardy statute is that application of the third exception to the double jeopardy bar to a second trial laid out in K.S.A. 2018 Supp. 21-5110(a)(3)(C) is coextensive with application of K.S.A. 22-3423(1)(a) and (1)(c) of the *461 mistrial statute. In short, the State believes that the district judge correctly applied the two subsections of the mistrial statute; thus the district judge must have correctly applied K.S.A. 2018 Supp. 21-5110(a)(3)(C) of the double jeopardy statute as well. The State relies on the appearance of the word "impossible" in all three provisions.
The first and most obvious reason that this argument is unavailing is that, as established above, the plain language of the two subsections of the mistrial statute on which the State attempts to rely is inapplicable in this case. The mistrial declared here was improper.
The second reason the State cannot rely successfully on (a)(3)(C) is that its plain language requires that it be impossible for the jury to arrive at a verdict. Giving the common words "impossible" and "verdict" their ordinary meaning, the child's refusal to take the oath did not inevitably and irrevocably prevent the jury from deciding the question of his guilt. "[A] verdict" is not synonymous with "a conviction"; an acquittal also qualifies as a verdict. See Black's Law Dictionary 28 (10th ed. 2014) ("acquittal" is "legal certification, usu. by jury verdict, that an accused person is not guilty of the charged offense"). The State's argument essentially ignores this reality.
CONCLUSION
The plain language of K.S.A. 22-3423 does not permit a mistrial to be declared over a defendant's objection when the prosecutor chooses to open the State's case with hearsay evidence; a proper defense objection to that evidence is overruled; and anticipated testimony from a child hearsay declarant fails to materialize because the child refuses to take the oath when called to the witness stand.
The plain language of the Kansas double jeopardy statute, K.S.A. 2018 Supp. 21-5110(a)(3), bars a second trial when (1) the State formerly prosecuted a defendant for the same crime, based on the same facts; (2) the previous prosecution was terminated without the consent of the defendant after having been placed in jeopardy; and (3) no exception listed in the statute applies. An improperly declared mistrial under K.S.A. 22-3423 is not one of the exceptions in the double jeopardy statute; thus it does not permit a second trial.
In this case, Bowman has successfully established that the district judge improperly declared a mistrial and that no exception to the statutory bar to a second trial applies. We therefore grant the petition for writ of habeas corpus. Bowman's criminal case is dismissed, and Bowman must be released from any confinement arising out of it.